UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ROBERT W. BODENMILLER,

                              Plaintiff,                              **COMPLAINT**

                  -against-                               TRIAL BY JURY
                                                              DEMANDED

COUNTY OF SUFFOLK,
SUFFOLK COUNTY POLICE DEPARTMENT,
SCOTT COYNE, Individually, and in his capacity as
Chief Surgeon, Medical Evaluation Section,
Suffolk County Police Department, and
EDWARD STAINKAMP, Individually, and in his capacity as
Commanding Officer, Medical Evaluation Section,
Suffolk County Police Department, jointly and severally,

                             Defendants.
-----------------------------------------------------------------------X

       Plaintiff, ROBERT W. BODENMILLER, respectfully allege as follows:

### NATURE OF ACTION

       1.      This action is commenced for the purpose of seeking redress (1) for the harm done to plaintiff as a result of the defendant's actions in discriminating against him on the basis of his disability, in violation of Title I and Title II of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et. seq., (hereinafter, the "ADA"), as well as the Rehabilitation Act, 29 U.S.C. § 701, et. seq. (hereinafter, "the Rehabilitation Act"); (2) for harm done to plaintiff as a result of the defendants' actions in violating his federal constitutional right to due process and equal protection of the laws, giving rise to liability under 29 U.S.C. § 1983; and (3) in tort, to recover for injuries caused by defendants' breach of their duty of care to plaintiff arising under state law. This action seeks, in addition to all relief otherwise provided for by law; punitive damages.

1

<u>JURISDICTION AND VENUE</u>

2.     This court has jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 (a) (4), and 42 U.S.C. § 2000e-5.

3.     This court has supplemental jurisdiction over the non-federal claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c), because defendants, SUFFOLK COUNTY POLICE DEPARTMENT and COUNTY OF SUFFOLK reside in this district and a substantial part of the events and/or omissions giving rise to this claim occurred in this district.

<u>THE PARTIES</u>

5.     Plaintiff, ROBERT W. BODENMILLER (hereinafter referred to as "plaintiff") is a resident of the County of Suffolk and State of New York.

6.     Defendant, COUNTY OF SUFFOLK (hereinafter referred to as "COUNTY" or "the COUNTY"), at all times relevant hereto, was and is a "municipal corporation" and a "county" within the meaning of §3 of the County Law, and plaintiff's "employer" within the meaning of 42 U.S.C. §12111(5).

7.     Defendant, SUFFOLK COUNTY POLICE DEPARTMENT ("SCPD"), at all times relevant hereto, was and is a department and agency of defendant, the COUNTY, in accordance with Article XIII of the Administrative Code of Suffolk County, and the plaintiff's "employer" within the meaning of 42 U.S.C. §12111(5).

8.      Defendant, SCOTT COYNE, at all times relevant hereto, was and is the Chief Surgeon of the Medical Evaluation Section of defendant, SCPD, and an employee and agent of defendants, COUNTY and SCPD.

9.      Defendant, EDWARD STAINKAMP, at all times relevant hereto, was and is the Commanding Officer of the Medical Evaluation Section of defendant, SCPD, and an employee and agent of defendants, COUNTY and SCPD.

10.     At all times relevant herein, the roles of defendants, COUNTY, SCPD, SCOTT COYNE and EDWARD STAINKAMP, as they relate to determining the eligibility of employees to receive reasonable accommodations of disabilities within the meaning of the ADA, were substantially intertwined such that, at all times relevant herein, defendants, COUNTY, SCPD, SCOTT COYNE and EDWARD STAINKAMP (herein referred to, collectively, as "defendants"), were the plaintiff's "employer" within the meaning of 42 U.S.C. §12111(5).

ALLEGATIONS COMMON TO ALL CLAIMS

11.     On December 1, 1986, plaintiff was hired by the COUNTY and SCPD as a police officer.

12.     On August 4, 2010, plaintiff sustained an injury to his left shoulder while in the performance of his duties as a police officer for the COUNTY and SCPD.

13.     As a result of the injury he sustained on August 4, 2010, plaintiff was disabled, for significant periods of time, from working in any capacity pursuant to his employment with the COUNTY and SCPD as a police officer.

14.     For all periods of time plaintiff was disabled from working as a result of the injury

3

he sustained on August 4, 2010, plaintiff was paid by the COUNTY his full salary, in accordance with New York General Municipal Law § 207-c and was designed, for such periods, by the COUNTY and SCPD as being on "401" (line-of-duty; 207-c) status (hereinafter, "401 paid leave").

15.    On March 12, 2012, plaintiff sustained an injury to his left shoulder and left elbow while in the performance of his duties as a police officer for the COUNTY and SCPD.

16.    As a result of the injury he sustained on March 12, 2012, plaintiff was disabled, for significant periods of time, from working in any capacity pursuant to his employment with the COUNTY and SCPD as a police officer.

17.    For all periods of time plaintiff was disabled from working as a result of the injury he sustained on March 12, 2012, plaintiff was paid by the COUNTY his full salary, in accordance with New York General Municipal Law § 207-c and was designed, for such periods, by the County and SCPD as being on 401 paid leave.

18.    On February 21, 2018, plaintiff filed a verified complaint with the New York State Division of Human Rights ("NYS DHR") charging the SCPD with an unlawful practice relating to employment because of disability in violation of N.Y. Executive Law, Article 15; designated NYS DHR Case No. 10193163. That charge was thereafter, "dual filed" with the EEOC and designated Federal Charge No. 16GB802067.

19.    On June 28, 2018, plaintiff, as per defendants' order, submitted to a medical examination by Craig H. Rosenberg, M.D. to determine whether he remained disabled from working as a police officer and, consequently, was entitled to remain on 401 paid leave or

whether his current medical condition would allow him to return to duty in a limited duty capacity.

20.    In a Medscope Evaluation report, dated June 28, 2018, Dr. Rosenberg; under "Impression"; diagnosed plaintiff with "[c]hronic left shoulder pain with findings of degenerative changes and examination findings suggestive of chronic impingement and bicipital tendinitis; Status post left ulnar transposition surgery with continued complaints of numbness and paresthesis primarily in the left ring and pinky digits."

21.    In the Medscope Evaluation report, dated June 28, 2018, Dr. Rosenberg; under "Review of Records" noted a Police Surgeon's Report from defendant, SCOTT COYNE, dated May 30, 2018, which, among other things, reported a medication regime which included, Lyrica, methocarbamol, oxycodone, tamazepam, amitiza, diazepam, and magnesium. He noted that the Police Surgeon's report concluded with a Duty Status Recommendation of limited duty with no patrol, no confrontation, and no physical contact with prisoners.

22.    In the Medscope Evaluation report, dated June 28, 2018, Dr. Rosenberg; under "Assessment" opined that while it was his "opinion that [plaintiff] is physically capable of returning to work performing desk type duty as a result of the injury sustained on 03/02/2012 and the reoccurrence sustained on 11/17/2015… [h]e is taking multiple medications including Lyrica, diazepam, oxycodone, and methocarbamol during the daytime hours which would preclude his ability to return to work in a limited duty capacity based upon the latest ACOEM LEO Guidelines. In order to be able to return to work in a limited duty capacity, he would be required not to take any of these identified medications during his assigned work shifts in addition to a

reasonable period of time prior to the start of his assigned work shifts. It is therefore my opinion that he would not be capable of remaining at work based upon his described medication regime. I recommend that he remain out of work on temporary total disability pending adjustment of his daily medication regime."

23.    In an accompanying Member's Physical Condition and Restrictions Report, dated June 28, 2018, and signed by Dr. Rosenberg, he designated plaintiff as "Totally Disabled." Under item I ("Ability to Use Firearms") he noted "No firearms". Under item N ("Effects of Prescribed Medication on Performance; May cause") he noted, "1. Sedition. 2. Impaired Concentration 3. Dizziness." Finally, under item P ("Other") he noted "Primary reason for total disability is current medication regime listed above".

24.    By letter of defendant, EDWARD STAINKAMP to plaintiff, dated July 3, 2018, plaintiff was advised that, in accordance with the recommendation set forth in the Medscope Evaluation report, dated June 28, 2018; (1) he had been determined to be temporarily totally disabled; (2) he would be required to submit to a Medscope reevaluation in three months; and (3) his attendance record would continue to indicate 401 paid leave status until further notice.

25.    The entry in item I of the Member's Physical Condition and Restrictions Report notwithstanding, defendants took no action, following their receipt of the Medscope Evaluation report, dated June 28, 2018, to restrict plaintiff's access to, or use of, firearms.

26.    Defendants also did not direct plaintiff to submit to another Medscope evaluation within three months of the June 28, 2018 examination. Instead, defendants waited seven months; i.e., until January, 2019, before directing plaintiff to submit to a reevaluation.

27.     On or about August 21, 2018, plaintiff filed a second verified complaint with the NYS DHR charging the SCPD with an unlawful practice relating to employment because of disability in violation of N.Y. Executive Law, Article 15, and for retaliation for exercising rights afforded him under the aforesaid law; designated NYS DHR Case No. 10196475. That charge was thereafter, "dual filed" with the EEOC and designated Federal Charge No. 16GB804667.

28.     On or about October 10, 2018, plaintiff filed a third verified complaint with the NYS DHR charging the SCPD with an unlawful practice relating to employment because of disability in violation of N.Y. Executive Law, Article 15, and for retaliation for exercising rights afforded him under the aforesaid law; designated NYS DHR Case No. 10197750. That charge was thereafter, "dual filed" with the EEOC and designated Federal Charge No. 16GB900487.

29.     On January 24, 2019, plaintiff, in accordance with defendants' order, again, submitted to a medical examination by Craig H. Rosenberg, M.D. to determine whether he remained disabled from working as a police officer and, consequently, was entitled to remain on "401" duty status, or whether his current medical condition would allow him to return to duty in a limited duty capacity.

30.     In a Medscope Evaluation report, dated January 24, 2019, Dr. Rosenberg; under "Impression"; again, diagnosed "[c]hronic left bicipital tendinitis; Status post left ulnar transposition surgery with continued complaints of numbness and paresthesis primarily in the left ring and pinky digits."

31.     In the Medscope Evaluation report, dated January 24, 2019, Dr. Rosenberg; under "Review of Records" noted a Police Surgeon's Report from defendant, SCOTT COYNE, dated

January 7, 2019, which, among other things, reported a medication regime which included, Diazepam, amitra, Lyrica, magnesium, Percocet 10/325, methocarbamol, Dulcolax and MiraLAX. He noted that this second Police Surgeon's report, again, concluded with a Duty Status Recommendation of limited duty with no physical contact with prisoners or police patrol functions with specific accommodations for light duty based on plaintiff's physical condition.

32.     In the Medscope Evaluation report, dated January 24, 2019, Dr. Rosenberg; under "Assessment", again, opined that that it was his "opinion that [plaintiff] is physically capable of returning to work and performing desk type duty as a result of the injuries sustained on 03/02/2012 and the claimed reoccurrence sustained on 11/17/2015." Significantly, he further confirmed that "[r]eview of [plaintiff's] current medications reveal there has been no notable interval changes (compared with the prior Medscope evaluation) except that he no longer takes methocarbamol regularly." (emphasis added).

33.      Despite the absence of any notable changes in the medication regime which he had determined, in June, 2018, precluded plaintiff from returning to work in a limited duty capacity, in his Medscope Evaluation report, dated January 24, 2019, Dr. Rosenberg indicated "I concur with the recommendations of the Police Surgeons who have examined [plaintiff] and recommend that he may return to limited duty work… Given the chronicity of this case, I recommend a Medscope follow up in one year."

34.     An accompanying Member's Physical Condition and Restrictions Report, dated January 24, 2019, and signed by Dr. Rosenberg, reflects findings which are virtually identical to the findings set forth on the previous Member's Physical Condition and Restrictions Report,

dated June 28, 2018. Specifically, the January 24, 2019 report; under item I, again, notes "No firearms" and under item N ("Effects of Prescribed Medication on Performance; May cause") notes "1. Sedition. 2. Impaired Concentration 3. Dizziness."

35.     In fact, the only material difference between the two reports is that the January 24, 2019 report fails to include the notation under item P that "Primary reason for total disability is current medication regime listed above" and, instead, classifies plaintiff as "Fit for Restricted Duty" as opposed to "Totally Disabled".

36.     By letter of defendant, EDWARD STAINKAMP to plaintiff, dated January 28, 2019, plaintiff was advised that, in accordance with the recommendation set forth in the Dr. Rosenberg's Medscope Evaluation report, dated January 24, 2019; (1) he had been found to be fit for limited duty; and that his limited duty status would carry the restrictions noted in the attached Member's Physical Condition and Restrictions Report; and (3) effective, January 29, 2019, he was being removed from 401 paid leave status and was being assigned to the 1st Precinct.

37.     Moreover, despite the fact that no restriction had been placed on plaintiff's use of firearms following the Medscope Evaluation of June 28, 2018, or, for that matter, at any time during which plaintiff was previously on 401 paid leave, defendants, on January 28, 2019, per the directive of defendant, EDWARD STAINKAMP, issued plaintiff a restricted SCPD identification card; with the restriction "No Firearms."

38.     At the further direction of defendant, EDWARD STAINKAMP, plaintiff was prohibited from attending firearms training previously scheduled to take place on February 7, 2019.

9

39.     Upon being advised that the February 7, 2019 firearms training had been cancelled, plaintiff wrote an internal correspondence to Inspector, Kevin Kane, Commanding Officer, First Precinct, SCPD, requesting that he be assigned a date for firearms requalification.

40.     In response, Inspector Kane advised plaintiff that due to the firearms restriction issued by defendant, EDWARD STAINKAMP, plaintiff was ineligible to participate in firearms training.

41.     On or about January 29, 2019, plaintiff began performing a limited or restricted duty assignment while assigned to the 1st precinct, in accordance with the January 28, 2019 directive of defendant, EDWARD STAINKAMP. In fact, the duty assignment plaintiff was given was that of "desk officer". Pursuant to that assignment, plaintiff was required to "man the desk"; i.e., interact with members of the public who enter the precinct house to report incidents which might require a police response, lodge complaints, etc.

42.     As a direct consequence of the plaintiff's restricted status, defendants placed plaintiff in a restricted assignment where he had little or no means of self-defense based on his physical injury and defendants' restrictions on carrying any firearms on or off duty.

43.     At all times relevant herein, it has been the pattern and practice of defendants, the COUNTY and SCPD to exclude amounts paid to police officer employees while on 401 paid leave from the entry "Wages, tips and other compensation"; i.e., gross income, on any Internal Revenue Service ("IRS") Form W-2 issued to such police officer employees.

44.     In accordance with the pattern and practice more particularly described in the preceding paragraph, for tax year 2017, defendants, the COUNTY and SCPD issued to plaintiff

10

an IRS Form W-2 which excluded from gross income, all amounts paid to plaintiff for periods during which plaintiff was on 401 paid leave.

45.     In contrast, with regard to tax year 2018, defendants, COUNTY and SCPD issued to plaintiff an IRS Form W-2 which included in gross income, all amounts paid to plaintiff for periods during which plaintiff was on 401 paid leave.

46.     In addition, at some point in time in 2018, defendants, COUNTY and SCPD began to impermissibly deduct tax withholdings from the regular payments made to plaintiff, in due course, while he was on 401 paid leave.

47.     When plaintiff inquired of defendants why amounts paid to him while on 401 paid leave were (1) included in the Form W-2 issued for 2018; and (2) were being subject to withholding, representatives and employees of defendants, COUNTY and SCPD erroneously advised plaintiff that he was no longer entitled to the exclusion from gross income for amounts paid while on 401 paid leave because of a finding by the New York State Workers' Compensation Board that plaintiff had achieved maximum medical improvement.

48.     In fact, determinations by the New York State Workers' Compensation Board, as a matter of law, are not dispositive of issues concerning the entitlement of a recipient to General Municipal Law § 207-c benefits; see, *Matter of Balcerak v, County of Nassau*, 94 N.Y.2d 253, 723 N.E.2d 555, 701 N.Y.S.2d 700 (1999).

49.     Ultimately, after repeated requests by plaintiff, defendants, COUNTY and SCPD conceded that the inclusion of amounts paid to plaintiff while on 401 paid leave in plaintiff's Form W-2; and (2) the imposition of withholding of deductions from periodic payments of 401

paid leave benefits to plaintiff had been undertaken in error. Thereafter, defendants, COUNTY and SCPD ceased making withholding deductions from plaintiff's 401 paid leave benefits and issued a revised 2018 FormW-2, which, upon information and belief, does not include, as gross income, amounts paid to plaintiff while on 401 paid leave.

50.     Finally, upon information and belief, throughout the periods more particularly described above during which plaintiff was on a duly designated and approved, 401 paid leave, defendants engaged in an ongoing campaign of harassment and intimidation of plaintiff; including, but not limited to, conducting surveillance and monitoring of plaintiff, his activities and his residence. Given that plaintiff has, at all relevant times herein, complied with all rules, regulations, laws and other legal mandates governing the determination of his eligibility for, and entitlement to, 401 paid leave benefits, defendants actions in this regard are unwarranted, unsanctioned and unauthorized by any rule, regulation, law or other legal mandate determining plaintiff's eligibility for 401 paid leave benefits and have resulted in severe and substantial injury to plaintiff.

51.     On March 20, 2019, plaintiff caused to be served on defendants, a Notice of Claim, in accordance with County Law § 52, setting forth the claims alleged herein. To date, none of the claims set forth in the Notice of Claim have been adjusted or paid by defendants.

THE ADMINISTRATIVE COMPLAINT

52.     On February 13, 2019, plaintiff filed a verified complaint against defendants with the NYS DHR setting forth, in sum and substance, the above facts and circumstances and alleging unlawful discrimination in employment on the basis of disability in violation of N.Y.

12

Executive Law, Article 15, and for retaliation for exercising rights afforded him under the aforesaid law; designated NYS DHR Case No. 10200005. That charge was thereafter, "dual filed" with the EEOC and designated Federal Charge No. 16GB902219.

53.　　Pursuant to a Determination and Order after Investigation, dated August 21, 2019 ("Determination"), NYS DHR determined that there was no probable cause to believe that defendants engaged in or are engaging in the unlawful discrimination alleged in the complaint.

54.　　Pursuant to a Dismissal and Notice of Rights advisement, dated December 20, 2019 ("Notice"), the EEOC advised plaintiff that it had adopted the findings of DHR and was, accordingly, dismissing Federal Charge No. 16GB902219. The Notice further advised plaintiff of his right to file a lawsuit alleging liability under the ADA, based on the allegations set forth in the Charge, within ninety (90) days of his receipt of the Notice.

55.　　This action is commenced within ninety (90) days of plaintiff's receipt of the Notice.

## AS AND FOR A FIRST CLAIM FOR WHICH RELIEF CAN BE GRANTED

### Failure to Provide a Reasonable Accommodation of Disability
### [42 U.S.C. § 12101, et. seq., 29 U.S.C. § 701, et. seq.]

56.　　Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation contained in the paragraphs of the complaint numbered "1" through "55", inclusive, with the same force and effect as if more fully set forth herein at length.

57.　　At all times above mentioned, the plaintiff was a person with a disability, within the meaning of the ADA, as well as the Rehabilitation Act.

58.     At all times above mentioned, the plaintiff suffered from physical impairments that substantially limited one or more major life activities; including, but not limited to, caring for oneself, performing manual tasks, sleeping, concentrating, thinking, communicating and working.

59.     At all times above mentioned, plaintiff was a person regarded by defendants, the COUNTY, SCPD, SCOTT COYNE, and EDWARD STAINKAMP as having a physical impairment, within the meaning of the ADA and the Rehabilitation Act.

60.     As a consequence of plaintiff's disability or defendants regarding plaintiff as disabled, defendants, the COUNTY, SCPD, SCOTT COYNE, and EDWARD STAINKAMP were obligated to engage the plaintiff in an interactive process to determine whether the plaintiff's disability could be reasonably accommodated.

61.     At all times relevant herein, the plaintiff was qualified to perform the essential functions of his position with a reasonable accommodation consisting of a continued period of 401 paid leave to allow him to recover from, and be treated by a health care provider for, the physical impairments which resulted in his disability.

62.     Based on the above, the plaintiff has demonstrated that (a) he was, at all material times herein, "an individual who has a disability" within the meaning of the ADA and the Rehabilitation Act; (b) his employers had notice of his disability; (c) he could perform the essential functions of his job with reasonable accommodation; and (d) his employer refused to make the requested accommodation.

63.     Based on the above the plaintiff has demonstrated that he was, at all material times herein, an individual regarded as having a physical impairment rendering him disabled within the

meaning of the ADA and the Rehabilitation Act.

64.     Throughout his employment with defendants, the COUNTY, SCPD, SCOTT COYNE, and EDWARD STAINKAMP, plaintiff was an exemplary employee and consistently performed at a level which exceeded the minimal qualifications of his position.

65.     By failing and refusing to engage the plaintiff in an interactive process to determine whether a reasonable accommodation of his disability was available, defendants, the COUNTY, SCPD, SCOTT COYNE, and EDWARD STAINKAMP discriminated against plaintiff on the basis of his disability, in violation of the ADA and the Rehabilitation Act.

66.     By refusing to grant plaintiff a reasonable accommodation of his disability, i.e., a continued period of 401 paid leave to allow him to recover from, and be treated by a health care provider for the physical impairments which resulted in his disability, defendants, the COUNTY, SCPD, SCOTT COYNE, and EDWARD STAINKAMP discriminated against plaintiff on the basis of his disability, in violation of the ADA and the Rehabilitation Act.

67.     As a proximate result of defendant' actions, plaintiff has suffered and continues to suffer from substantial loss of past and future earnings, bonuses, and other employment benefits.

68.     By engaging in the above actions, defendants engaged in intentional discrimination and did so with malice or reckless indifference to the federally protected rights of plaintiff as an aggrieved individual.

69.     As a proximate result of defendants' actions, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, physical and mental anguish and injury, economic hardship, lost wages and benefits and other incidental and consequential damages and

expenses, all to plaintiff's damage, in an amount to be determined at trial.

70.     By engaging in the above actions, defendants, COUNTY, SCPD, SCOTT COYNE, and EDWARD STAINKAMP discriminated against plaintiff on the basis of his disability in violation of the ADA, as well as the Rehabilitation Act, for which plaintiff is entitled to an award of compensatory damages; punitive damages; and attorneys' fees incurred in the prosecution of his claim as well as an order that defendants be permanently enjoined from discriminating against plaintiff in any manner prohibited by the ADA and the Rehabilitation Act.

### AS AND FOR A SECOND CLAIM FOR WHICH RELIEF CAN BE GRANTED

**Disparate Treatment based on Disability**
**[42 U.S.C. § 12101, et. seq., 29 U.S.C. § 701, et. seq.]**

71.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation contained in the paragraphs of the complaint numbered "1" through "70", inclusive, with the same force and effect as if more fully set forth herein at length.

72.     By (1) terminating, on January 28, 2019, plaintiff's unrestricted firearms status; (2) prohibiting plaintiff from attending firearms training previously scheduled to take place on February 7, 2019 and, thereafter, refusing to reauthorize plaintiff's firearms training; (3) terminating, on January 28, 2019, plaintiff's 401 paid leave status; and (4) subjecting plaintiff to an ongoing campaign of harassment and intimidation, without any non-discriminatory or other legitimate purpose, defendants, COUNTY, SCPD, SCOTT COYNE, and EDWARD STAINKAMP discriminated against plaintiff on the basis of his disability, in violation of the ADA and the Rehabilitation Act.

73.     As a proximate result of defendant' actions, plaintiff has suffered and continues to

suffer from substantial loss of past and future earnings, bonuses, and other employment benefits; including but not limited to, the privilege otherwise accruing to him as a sworn police officer in New York State, to possess, carry and use firearms to the extent and in the manner otherwise enjoyed by police officers employed by defendants who are not disabled within the meaning of the ADA and the Rehabilitation Act.

74.     By engaging in the above actions, defendants engaged in intentional discrimination and did so with malice or reckless indifference to the federally protected rights of plaintiff as an aggrieved individual.

75.     As a proximate result of defendants' actions, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, physical and mental anguish and injury, economic hardship, lost wages and benefits and other incidental and consequential damages and expenses, all to plaintiff's damage, in an amount to be determined at trial.

76.     By engaging in the above actions, defendants, COUNTY, SCPD, SCOTT COYNE, and EDWARD STAINKAMP discriminated against plaintiff on the basis of his disability in violation of the ADA, as well as the Rehabilitation Act, for which plaintiff is entitled to an award of compensatory damages; punitive damages; and attorneys' fees incurred in the prosecution of his claim as well as an order directing defendants to restore to plaintiff the privilege he enjoyed before January 28, 2019, to possess, carry and use firearms to the extent and in the manner otherwise enjoyed by police officers employed by defendants who are not disabled within the meaning of the ADA and the Rehabilitation Act and enjoining defendants from otherwise discriminating against plaintiff in any manner prohibited by the ADA and the Rehabilitation Act.

## AS AND FOR A THIRD CLAIM FOR WHICH RELIEF CAN BE GRANTED

### Retaliation for Engaging in Protected Activity
**[42 U.S.C. § 12101, et. seq., 29 U.S.C. § 701, et. seq.]**

77.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation contained in the paragraphs of the complaint numbered "1" through "76", inclusive, with the same force and effect as if more fully set forth herein at length.

78.     By (1) terminating, on January 28, 2019, plaintiff's unrestricted firearms status; (2) prohibiting plaintiff from attending firearms training previously scheduled to take place on February 7, 2019 and, thereafter, refusing to reauthorize plaintiff's firearms training; (3) terminating, on January 28, 2019, plaintiff's 401 paid leave status; (4) including amounts paid to plaintiff while on 401 paid leave in plaintiff's Form W-2 for tax year 2018; (5) making withholding deductions from periodic payments of 401 paid leave benefits to plaintiff; and (6) subjecting plaintiff to an ongoing campaign of harassment and intimidation, without any non-discriminatory or other legitimate purpose, defendants, COUNTY, SCPD, SCOTT COYNE, and EDWARD STAINKAMP retaliated against plaintiff for exercising his rights to request and receive a reasonable accommodation of his disability and his right to employment free from discrimination based on disability and further retaliated against plaintiff for exercising rights guaranteed to him under the ADA and the Rehabilitation Act; including, but not limited to the right to seek redress for unlawful employment discrimination by filing the administrative charges in NYS DHR Case No. 10193163 (Federal Charge No. 16GB802067); NYS DHR Case No.10196475 (Federal Charge No. 16GB804667); and NYS DHR Case No 10197750 (Federal Charge No. 16GB900487).

79.     Based on the above, the plaintiff has also demonstrated that (a) he was engaged in

18

activity protected by the ADA and the Rehabilitation Act; (2) his employers were aware of the protected activity; (3) he suffered adverse employment action by his employer; and (4) there existed a causal connection between the protected activity and the adverse employment action.

80.     As a proximate result of defendant' actions, plaintiff has suffered and continues to suffer from substantial loss of past and future earnings, bonuses, and other employment benefits; including but not limited to, the privilege otherwise accruing to him as a sworn police officer in New York State, to possess, carry and use firearms to the extent and in the manner otherwise enjoyed by police officers employed by defendants who are not disabled within the meaning of the ADA and the Rehabilitation Act.

81.     By engaging in the above actions, defendants engaged in intentional discrimination and did so with malice or reckless indifference to the federally protected rights of plaintiff as an aggrieved individual.

82.     As a proximate result of defendants' actions, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, physical and mental anguish and injury, economic hardship, lost wages and benefits and other incidental and consequential damages and expenses, all to plaintiff's damage, in an amount to be determined at trial.

83.     By engaging in the above actions, defendants, COUNTY, SCPD, SCOTT COYNE, and EDWARD STAINKAMP discriminated against plaintiff on the basis of his disability in violation of the ADA, as well as the Rehabilitation Act, for which plaintiff is entitled to an award of compensatory damages; punitive damages; and attorneys' fees incurred in the prosecution of his claim as well as an order directing defendants to restore to plaintiff the privilege he enjoyed before

January 28, 2019, to possess, carry and use firearms to the extent and in the manner otherwise enjoyed by police officers employed by defendants who are not disabled within the meaning of the ADA and the Rehabilitation Act and enjoining defendants from otherwise discriminating against plaintiff in any manner prohibited by the ADA and the Rehabilitation Act.

## AS AND FOR A FOURTH CLAIM FOR WHICH RELIEF CAN BE GRANTED

**Violation of Plaintiff's Rights Under the ADA and the Rehabilitation Act by Persons Acting Under Color of Law**
**[42 U.S.C. § 1983]**

84.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation contained in the paragraphs of the complaint numbered "1" through "83", inclusive, with the same force and effect as if more fully set forth herein at length.

85.     By engaging in the acts set forth above, violating plaintiff's right to be free from discrimination with respect to his compensation, terms, conditions or privileges of employment because of his disability and to be free from retaliation for exercising his right to request and receive a reasonable accommodation of his disability; his right to employment free from discrimination based on disability; and, his right to seek redress for unlawful employment discrimination, defendants, SCOTT COYNE, and EDWARD STAINKAMP, while acting under color of state law, in their official capacity and pursuant to their assigned duties as employees of defendants, COUNTY and SCPD, violated rights guaranteed to plaintiff under the ADA and the Rehabilitation Act for which they are liable to plaintiff, pursuant to 42 U.S.C. § 1983.

86.     As a proximate result of the actions of defendants, SCOTT COYNE, and EDWARD STAINKAMP, plaintiff has suffered and continues to suffer severe and lasting embarrassment,

humiliation, physical and mental anguish and injury, economic hardship, lost wages and benefits and other incidental and consequential damages and expenses, all to plaintiff's damage, in an amount to be determined at trial.

## AS AND FOR A FIFTH CLAIM FOR WHICH RELIEF CAN BE GRANTED

### Violation of Plaintiff's Fourteenth Amendment Right to Procedural Due Process by Persons Acting Under Color of Law
### [42 U.S.C. § 1983]

87.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation contained in the paragraphs of the complaint numbered "1" through "86", inclusive, with the same force and effect as if more fully set forth herein at length.

88.     Pursuant to New York Criminal Procedure Law § 1.20 (34) (c) and New York Penal Law § 265.20 (a) (1) (b), plaintiff, by virtue of his status as a sworn police officer employed by an authorized county police department, was entitled to possess, carry and use firearms.

89.     Plaintiff's right, by virtue of his status as a sworn police officer employed by an authorized county police department, to possess, carry and use firearms is a constitutionally protected property interest of which he may not be deprived without due process of law; see, *Spinelli v. City of New York*, 579 F.3d 160 (2d. Cir 2009).

90.     Defendants' actions in; (1) issuing plaintiff a restricted SCPD identification card; with the restriction "No Firearms"; (2) prohibiting plaintiff from attending firearms training previously scheduled to take place on February 7, 2019; and (3) refusing to reauthorize plaintiff's firearms training in response to plaintiff's request, constituted a deprivation of plaintiff's constitutionally-

protected property interest to possess, carry and use firearms, without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

91.     In order to comport with constitutionally-required procedural due process, defendants, at a minimum, were obligated to afford a plaintiff a pre-deprivation hearing before rendering a final determination at which plaintiff could offer testimonial and documentary evidence before a hearing officer.

92.     At the time of the deprivation alleged above, plaintiff had a legitimate claim of entitlement to continued possession and use of firearms, without restriction.

93.     All of the above actions complained of were undertaken in accordance with an established procedure of defendants, COUNTY and SCPD, and, accordingly, defendants, SCOTT COYNE, and EDWARD STAINKAMP would have been able to predict when the depravation complained of would have occurred and, further, would have been in a position to provide plaintiff with a pre-deprivation hearing.

94.     At no time did defendants, SCOTT COYNE, and EDWARD STAINKAMP provide plaintiff with a hearing, or an opportunity to proceed to a hearing, prior to the depravation complained of.

95.     Under the circumstances set forth herein, the availability of post-deprivation procedures, including, but not limited to an Article 78 proceeding pursuant to the New York Civil Practice Law and Rules, does not *ipso facto,* satisfy due process.

96.     Upon information and belief, defendants, SCOTT COYNE, and EDWARD STAINKAMP (1) each participated directly in the constitutional violation more particularly

described above, (2) each, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) each participated in the creation of a policy or custom under which the complained of unconstitutional practice occurred and, further, allowed the continuance of such policy or custom, (4) were each grossly negligent in supervising subordinates who committed wrongful acts inextricably linked to the constitutional violation more particularly described above, and/or (5) exhibited deliberate indifference to the rights of plaintiff by failing to act on information indicating that unconstitutional acts were occurring.

97.     By engaging in the acts set forth above, defendants, SCOTT COYNE, and EDWARD STAINKAMP, while acting under color of state law, violated plaintiff's rights to procedural due process of law, as secured by the Fourteenth Amendment to the United States Constitution, for which they are each individually liable to plaintiff pursuant to 42 U.S.C. § 1983.

98.     As a proximate result of the actions of defendants, SCOTT COYNE, and EDWARD STAINKAMP, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, physical and mental anguish and injury, economic hardship, lost wages and benefits and other incidental and consequential damages and expenses, all to plaintiff's damage, in an amount to be determined at trial.

**AS AND FOR A SIXTH CLAIM FOR WHICH RELIEF CAN BE GRANTED**

**Violation of Plaintiff's Fourteenth Amendment Right to Substantive Due Process
by Persons Acting Under Color of Law
[42 U.S.C. § 1983]**

99.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation contained in the paragraphs of the complaint numbered "1" through "98", inclusive, with the same force and effect as if more fully set forth herein at length.

100.    The unwarranted and unconscionable actions of defendants, SCOTT COYNE, and EDWARD STAINKAMP in (1) terminating, on January 28, 2019, plaintiff's unrestricted firearms status; (2) prohibiting plaintiff from attending firearms training previously scheduled to take place on February 7, 2019 and, thereafter, refusing to reauthorize plaintiff's firearms training; (3) terminating, on January 28, 2019, plaintiff's 401 paid leave status; (4) including amounts paid to plaintiff while on 401 paid leave in plaintiff's Form W-2 for tax year 2018; (5) making withholding deductions from periodic payments of 401 paid leave benefits to plaintiff; and (6) subjecting plaintiff to an ongoing campaign of harassment and intimidation, without any non-discriminatory or other legitimate purpose, confirm that said defendants' conduct, in its totality, transgressed the outer limits of legitimate government action; see, *Harlen Assocs. V. Village of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001).

101.    By engaging in the acts set forth above, defendants, SCOTT COYNE, and EDWARD STAINKAMP, while acting under color of state law, violated plaintiff's rights to substantive due process of law, as secured by the Fourteenth Amendment to the United States Constitution, for which they are each individually liable to plaintiffs pursuant to 42 U.S.C. § 1983.

102.    As a proximate result of the actions of defendants, SCOTT COYNE, and EDWARD STAINKAMP, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, physical and mental anguish and injury, economic hardship, lost wages and benefits and

24

other incidental and consequential damages and expenses, all to plaintiff's damage, in an amount to be determined at trial.

## AS AND FOR A SEVENTH CLAIM FOR WHICH RELIEF CAN BE GRANTED

**Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection of the Laws by Persons Acting Under Color of Law**
**[42 U.S.C. § 1983]**

103.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation contained in the paragraphs of the complaint numbered "1" through "102", inclusive, with the same force and effect as if more fully set forth herein at length.

104.     By (1) terminating, on January 28, 2019, plaintiff's unrestricted firearms status; (2) prohibiting plaintiff from attending firearms training previously scheduled to take place on February 7, 2019 and, thereafter, refusing to reauthorize plaintiff's firearms training; (3) terminating, on January 28, 2019, plaintiff's 401 paid leave status; (4) including amounts paid to plaintiff while on 401 paid leave in plaintiff's Form W-2 for tax year 2018; (5) making withholding deductions from periodic payments of 401 paid leave benefits to plaintiff; and (6) subjecting plaintiff to an ongoing campaign of harassment and intimidation, without any non-discriminatory or other legitimate purpose, defendants, SCOTT COYNE, and EDWARD STAINKAMP intentionally treated plaintiff differently from others similarly situated; including other SCPD police officers who have been placed on 401 paid leave status.

105.     Defendants' selective and discriminatory treatment of plaintiff, as opposed to others similarly situated; including other SCPD police officers who have been placed on 401 paid leave status was, and is, arbitrary and without a rational basis.

106.     The arbitrary actions of defendants, SCOTT COYNE, and EDWARD STAINKAMP set forth above constituted a deprivation of plaintiffs' constitutionally-protected right to equal protection of the laws, in violation of the Fourteenth Amendment to the United States Constitution; *see, Bond v. Zoning Board of Town of East Hampton*, 2005 WL 8156961 (Not Reported in Fed. Supp.) (E.D.N.Y.) (2005).

107.     By engaging in the acts set forth above, defendants, SCOTT COYNE, and EDWARD STAINKAMP, while acting under color of state law, in their official capacity and pursuant to their assigned duties as employees of said defendant, violated plaintiff's right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution for which they are liable to plaintiff pursuant to 42 U.S.C. § 1983.

108.     As a proximate result of the actions of defendants, SCOTT COYNE, and EDWARD STAINKAMP, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, physical and mental anguish and injury, economic hardship, lost wages and benefits and other incidental and consequential damages and expenses, all to plaintiff's damage, in an amount to be determined at trial.

### AS AND FOR AN EIGHTH CLAIM FOR WHICH RELIEF CAN BE GRANTED

**Violation of Plaintiff's Rights Under the ADA, the Rehabilitation Act and the Fourteenth Amendment by a Municipal Entity
[42 U.S.C. § 1983; *Monell v. Dep't of Soc. Serv. Of City of New York*]**

109.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation contained in the paragraphs of the complaint numbered "1" through "108", inclusive, with the same force and effect as if more fully set forth herein at length.

110.     The actions and inactions of defendants, COUNTY and SCPD evinced (1) a failure on the part of defendants, COUNTY and SCPD to take corrective action after learning of the unlawful conduct of their subordinate employees and agents, defendants, SCOTT COYNE, and EDWARD STAINKAMP; (2) the creation of a policy or custom fostering the unlawful conduct complained of; (3) gross negligence in their supervising of their subordinate employees and agents who engaged in unlawful conduct; and (4) deliberate indifference to the rights of plaintiff by failing to act on information regarding the unlawful conduct of their employees and agents, while acting under color of state law, and pursuant to their assigned duties as employees and agents of said defendants, the COUNTY and SCPD.

111.     The unlawful conduct of defendants, SCOTT COYNE, and EDWARD STAINKAMP constituted actions taken or decisions made by COUNTY and SCPD officials with final decision making authority.

112.     Moreover, the unlawful conduct of defendants, SCOTT COYNE, and EDWARD STAINKAMP resulted from practices so persistent and widespread that they constituted a custom of which constructive knowledge and acquiescence can be implied on the part of COUNTY and SCPD policy making officials.

113.     Upon information and belief, defendants, COUNTY and SCPD knew, or should have known, that the failure to properly train or supervise and/or the failure to adopt proper policies, procedures or standards, and/or the failure to properly investigate and/or reckless disregard or gross indifference would result in the deprivation of rights secured to plaintiff by the ADA and the Rehabilitation Act, and the equal protection and due process clauses of the

Fourteenth Amendment to the United States Constitution, for which defendants, COUNTY and SCPD are liable to plaintiff pursuant to 42 U.S.C. § 1983.

114.     As a result of the failure of defendants, COUNTY and SCPD to take remedial action to properly investigate, and/or the reckless disregard or gross indifference by defendants, COUNTY and SCPD, said defendants, had a policy, practice or custom which condoned or permitted the denial of entitlements and rights otherwise secured to plaintiff by the ADA and the Rehabilitation Act, and the equal and due process clauses of the Fourteenth Amendment to the United States Constitution.

115.     Upon information and belief, defendants, COUNTY and SCPD, intentionally, knowingly, maliciously and/or recklessly permitted and/or allowed the continuation of such a policy, practice or custom.

116.     Upon information and belief, as a direct and proximate result of such policies, practice or customs, defendants, COUNTY and SCPD intentionally, deliberately or with reckless indifference deprived plaintiff of his statutory, constitutional and civil rights.

117.     The aforesaid reckless indifference, callous disregard and/or gross neglect by defendants, COUNTY and SCPD represents egregious conduct that is shocking to the conscience.

118.     As a proximate result of the actions of defendants, COUNTY and SCPD, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, physical and mental anguish and injury, economic hardship, lost wages and benefits and other incidental and

consequential damages and expenses, all to plaintiff's damage, in an amount to be determined at trial.

## AS AND FOR A NINTH CLAIM FOR WHICH RELIEF CAN BE GRANTED

### Intentional Infliction of Emotional Distress
### [New York State Common Law]

119.　Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation contained in the paragraphs of the complaint numbered "1" through "118", inclusive, with the same force and effect as if more fully set forth herein at length.

120.　The conduct of defendants, SCOTT COYNE, and EDWARD STAINKAMP toward plaintiff, as is more particularly described above, was so outrageous and shocking that it exceeded all reasonable bounds of decency as measured by what the average member of the community would tolerate.

121.　The conduct of defendants, SCOTT COYNE, and EDWARD STAINKAMP toward plaintiff, as is more particularly described above, caused severe emotional distress to plaintiff.

122.　Defendants, SCOTT COYNE, and EDWARD STAINKAMP acted under circumstances known to said defendants which made it substantially certain plaintiff would suffer severe emotional distress and, further, acted with utter disregard of the consequences of their actions.

123.　By engaging in the above actions, defendants, SCOTT COYNE, and EDWARD STAINKAMP intentionally engaged in outrageous conduct which caused emotional distress to plaintiff for which defendants, SCOTT COYNE, and EDWARD STAINKAMP are jointly and severally liable and for which plaintiff is entitled to an award of compensatory damages and punitive damages in an amount to be determined at trial.

## AS AND FOR A TENTH CLAIM FOR WHICH RELIEF CAN BE GRANTED

**Negligent Infliction of Emotional Distress**
**[New York State Common Law]**

124.    Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation contained in the paragraphs of the complaint numbered "1" through "122", inclusive, with the same force and effect as if more fully set forth herein at length.

125.    At all times relevant herein, defendants, SCOTT COYNE, and EDWARD STAINKAMP owed a duty to plaintiff to refrain from engaging in actions which would cause him to be exposed to an unreasonable risk of bodily injury.

126.    By engaging in the conduct more particularly described above, defendants, SCOTT COYNE, and EDWARD STAINKAMP unreasonably caused plaintiff to fear for his own safety.

127.    By engaging in the above actions, defendants, SCOTT COYNE, and EDWARD STAINKAMP breached their above described duty to plaintiff, resulting in the negligent infliction of emotional distress to plaintiff for which defendants, SCOTT COYNE, and EDWARD STAINKAMP are jointly and severally liable and for which plaintiff is entitled to an award of compensatory damages and punitive damages in an amount to be determined at trial.

## AS AND FOR A ELEVENTH CLAIM FOR WHICH RELIEF CAN BE GRANTED

***Prima Facia* Tort**
**[New York State Common Law]**

128.    Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation contained in the paragraphs of the complaint numbered "1" through "127", inclusive, with the same force and effect as if more fully set forth herein at length.

129.     At all times relevant herein, the actions of defendants, SCOTT COYNE, and EDWARD STAINKAMP; assuming they are otherwise determined to have been lawful were, nevertheless, undertaken with the intention, on their part, to inflict emotional harm on plaintiff; were solely motivated by malice or disinterested malevolence, and were otherwise without excuse or justification.

130.     At all times relevant herein, the actions of defendants, SCOTT COYNE, and EDWARD STAINKAMP complained of above, caused plaintiff to suffer reasonable, identifiable and measurable special damages; including, but not limited to, the loss of 410 paid leave benefits plaintiff would have otherwise received but for the actions of defendants, SCOTT COYNE, and EDWARD STAINKAMP.

131.     By engaging in the above actions, defendants, SCOTT COYNE, and EDWARD STAINKAMP are jointly and severally liable to plaintiff, in *prima facia* tort, for which plaintiff is entitled to an award of special damages, compensatory damages and punitive damages in an amount to be determined at trial.

## AS AND FOR A TWELFTH CLAIM FOR WHICH RELIEF CAN BE GRANTED

### Vicarious Liability
### [New York State Common Law]

132.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation contained in the paragraphs of the complaint numbered "1" through "131", inclusive, with the same force and effect as if more fully set forth herein at length.

133.     At all times relevant herein, defendants, SCOTT COYNE, and EDWARD STAINKAMP, acted within the scope of their authority as employees and agents of defendants,

COUNTY and SCPD; while engaged in the performance of their duties and while acting in furtherance of the business of those defendants.

134. Because the actions of defendants, SCOTT COYNE, and EDWARD STAINKAMP, were undertaken within the scope of their authority as employees and agents of defendants, the COUNTY and SCPD; defendants, the COUNTY and SCPD are vicariously and jointly and severally liable for the actions of defendants, SCOTT COYNE, and EDWARD STAINKAMP.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, ROBERT W. BODENMILLER, demands **Trial By Jury** and a judgment in his favor and against defendants as follows;

A. On the First Claim For Which Relief Can Be Granted, against all defendants, for pecuniary damages; including, but not limited to, backpay, frontpay, full salary, seniority, and benefits, compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph L, below;

B. On the Second Claim For Which Relief Can Be Granted, against all defendants, for pecuniary damages; including, but not limited to, backpay, frontpay, full salary, seniority, and benefits, compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph L, below;

C. On the Third Claim For Which Relief Can Be Granted, against all defendants, for pecuniary damages; including, but not limited to, backpay, frontpay, full salary, seniority, and benefits, compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph L, below;

D. On the Fourth Claim For Which Relief Can Be Granted, against defendants, SCOTT COYNE, and EDWARD STAINKAMP, in their individual capacities, for compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be

determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph M, below;

E. On the Fifth Claim For Which Relief Can Be Granted, against defendants, SCOTT COYNE, and EDWARD STAINKAMP, in their individual capacities, for compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph M , below;

F. On the Sixth Claim For Which Relief Can Be Granted, against defendants, SCOTT COYNE, and EDWARD STAINKAMP, in their individual capacities, for compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph M, below;

G. On the Seventh Claim For Which Relief Can Be Granted, against defendants, SCOTT COYNE, and EDWARD STAINKAMP, in their individual capacities, for compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph M, below;

H. On the Eighth Claim For Which Relief Can Be Granted, against defendants, COUNTY OF SUFFOLK and SUFFOLK COUNTY POLICE DEPARTMENT, for compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph M, below;

I. On the Ninth Claim For Which Relief Can Be Granted, against all defendants, for pecuniary damages, compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph M, below;

J. On the Tenth Claim For Which Relief Can Be Granted, against all defendants, for pecuniary damages, compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees

and injunctive relief as specifically prayed for at paragraph M, below;

K. On the Eleventh Claim For Which Relief Can Be Granted, against all defendants, for pecuniary damages, compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph M, below;

L. On the Twelfth Claim For Which Relief Can Be Granted, against defendants, COUNTY OF SUFFOLK and SUFFOLK COUNTY POLICE DEPARTMENT, for pecuniary damages, compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph M, below;

M. That defendants be ordered to provide all injunctive relief to which plaintiff may be entitled; including, but not limited to, an order directing defendants to issue plaintiff an unrestricted identification card and to remove any restriction on plaintiff's right to possess, carry and use firearms;

N. That defendants be ordered to pay to plaintiff punitive damages in an amount to be determined at trial, to punish defendants for their willful and malicious misconduct and as may be deemed by the court to be necessary to deter defendants from engaging in such misconduct in the future;

O. For such additional, equitable and legal relief as the court may deem just and proper;

P. For the costs and expenses of this action; and

Q.  For reasonable attorney's fees.

Dated: Smithtown, New York
      January 24, 2020

                Yours, etc.

                SCHAEFER LAW GROUP, P.C.

                Wayne J. Schaefer, Esq. (WS1129)
                *Attorneys for Plaintiff, ROBERT W.*
                *BODENMILLER*
                186 West Main Street

Smithtown, New York 11787
Tel. (631) 382-4800