UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

ROBERT W. BODENMILLER,

                              Plaintiff,                              **REPORT AND
                                                                     RECOMMENDATION**
                                                                     20-CV-0414 (JMA) (ARL)

                  -against-


COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, SCOTT COYNE,
Individually, and in his Capacity as Chief Surgeon,
Medical Evaluation Section, Suffolk County Police
Department, and EDWARD STAINKAMP,
Individually, and in his capacity as Commanding
Officer, Medical Evaluation Section, Suffolk
County Police Department, jointly and severally,

                              Defendants.
--------------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

         Robert W. Bodenmiller ("Plaintiff") brings this employment discrimination action against the

County of Suffolk (the "County"), the Suffolk County Police Department ("SCPD"), Scott

Coyne, individually, and in his capacity as Chief Surgeon, Medical Evaluation Section, SCPD,

and Edward Stainkamp, individually, and in his capacity as Commanding Officer, Medical

Evaluation Section, SCPD ("collectively "Defendants"), alleging violation of the Americans

with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101, et seq., Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794(a)("Rehabilitation Act"), 42 U.S.C § 1983, and

state law.  Before the Court, on referral from District Judge Azrack, is a motion to dismiss filed by

Defendants, as well as a cross-motion to amend the complaint filed by Plaintiff.  For the reasons set

forth below, the undersigned respectfully recommends that the motion to dismiss be granted, in part,

and, denied in part, and the motion to amend be denied.

## BACKGROUND

### A. Factual Background

The following facts are drawn from the Complaint and are accepted as true for purposes of the instant motion. *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). These facts, however, do not constitute findings of fact by the Court. *See Colvin v. State University College at Farmingdale*, No. 13-CV-3595 (SJF)(ARL), 2014 U.S. Dist. LEXIS 85678, 2014 WL 2864224, at *1 n.1 (E.D.N.Y. June 19, 2014).

Plaintiff, a resident of New York, was hired by the County as a police officer on December 1, 1986. Compl. ¶¶ 5, 11. The County is a "municipal corporation" and a "county" within the meaning of §3 of the County Law, and plaintiff's "employer" within the meaning of 42 U.S.C. §12111(5). *Id*. at ¶ 6. The SCPD is a department and agency of the County. *Id.* at ¶ 7. Defendant, Scott Coyne, is the Chief Surgeon of the Medical Evaluation Section of defendant, SCPD. . *Id*. at ¶ 8. Defendant, Edward Stainkamp, is the Commanding Officer of the Medical Evaluation Section of the SCPD. *Id*. at ¶ 9.

On August 4, 2010, Plaintiff injured his left shoulder while working which caused him to miss significant time from work. *Id*. at ¶ 13. For the entire period of his disability, the County paid Plaintiff his full salary, and, Plaintiff was designated; "401" (line-of-duty; 207-c) status ("401 leave"). *Id*. at ¶ 14. On March 12, 2012, Plaintiff, while working, sustained another injury to his left shoulder as well as to his left elbow. *Id*. at ¶ 15. The Complaint does not allege when, or if, Plaintiff returned to work from this injury in 2012, however, in a medical report cited in the Complaint, Dr. Rosenberg noted that Plaintiff sustained a "reoccurrence" on November 17, 2015. *Id*. at ¶ 22. Thus, while it is unclear whether Plaintiff had returned to

work between 2012 and 2015, Plaintiff did ultimately return to "limited duty assignment" in January 2019.  *Id*. at ¶ 41.

In an evaluation report, dated June 28, 2018, Dr. Rosenberg diagnosed Plaintiff with "[c]hronic left shoulder pain with findings of degenerative changes and examination findings suggestive of chronic impingement and bicipital tendinitis; Status post left ulnar transposition surgery with continued complaints of numbness and paresthesis primarily in the left ring and pinky digits" and noted a Police Surgeon's Report from defendant, Scott Coyne, dated May 30, 2018, which reported an extensive medication regime.  *Id*. at ¶¶ 21-24.  He also opined that Plaintiff would not be capable of remaining at work based upon his described medication regime and recommended that he remain out of work on temporary total disability pending adjustment of his daily medication.  *Id*. at ¶ 22.  In addition, he noted "no firearms."  *Id*. at ¶ 23.

Plaintiff was advised by Defendant Stainkamp that he was required to be reevaluated in three months.  *Id*. at ¶ 24.  This second evaluation, which did not take place until seven months later in January 2019, noted a Police Surgeon's Report from defendant, Scott Coyne, dated January 7, 2019, which, among other things, reported on Plaintiff's medication regime and concluded with a Duty Status Recommendation of limited duty with no physical contact with prisoners or police patrol functions with specific accommodations for light duty based on plaintiff's physical condition. *Id*. at ¶ 31.  In his report, Dr. Rosenberg; under "Assessment", again, opined that it was his "opinion that [plaintiff] is physically capable of returning to work and performing desk type duty as a result of the injuries sustained on 03/02/2012 and the claimed reoccurrence sustained on 11/17/2015." *Id*. at ¶ 32.  Plaintiff alleges that despite Dr. Rosenberg's finding that "[r]eview of [plaintiff's] current medications reveal there has been no notable interval changes (compared with the prior Medscope evaluation) except that he no longer

takes methocarbamol regularly," Dr. Rosenberg, in his January 24, 2019 report, stated "I concur with the recommendations of the Police Surgeons who have examined [plaintiff] and recommend that he may return to limited duty work… Given the chronicity of this case, I recommend a Medscope follow up in one year." *Id*. at ¶ 33. According to Plaintiff, the County, in a letter written by Defendant Stainkamp to Plaintiff, dated January 28, 2019, advised Plaintiff that he had been found to be fit for limited duty. *Id*. at ¶ 36.  In addition, the letter notified Plaintiff that he had been issued a restricted SCPD identification card; with the restriction "No Firearms." *Id*. at ¶ 37.  As a result of the restricted identification card, Plaintiff alleges he was precluded from participating in firearm training. *Id*. at ¶ 40.

Plaintiff reported to back to work on January 29, 2019, performing a limited or restricted duty assignment, in accordance with the January 28, 2019 directive of Defendant Stainkamp. *Id*. at ¶ 41.  The duty assignment Plaintiff was given was that of "desk officer" which required Plaintiff to interact with members of the public who enter the precinct house to report incident. *Id*.  Plaintiff alleges that as a direct consequence of the Plaintiff's restricted status, Defendants placed Plaintiff in a restricted assignment where he had little or no means of self-defense based on his physical injury and Defendants' restrictions on carrying any firearms on or off duty. *Id*. at ¶ 42.

Additionally, Plaintiff alleges that, unlike previous years, in tax year 2018, the County issued Plaintiff a W-2 which included in gross income, all amounts paid to Plaintiff for periods during which he was on 401 leave. *Id*. at ¶ 44.  In addition, according to Plaintiff, at some point in time in 2018, the County began to impermissibly deduct tax withholdings from the regular payments made to Plaintiff while he was on 401 leave. *Id*. at ¶ 46.  Ultimately, after repeated requests by Plaintiff, the County ceased making these withholding deductions and issued

plaintiff a revised 2018 Form W-2, which did not include, as gross income, amounts paid while plaintiff was on 401 paid leave. *Id*. at ¶ 49.

On February 21, 2018, Plaintiff filed a verified complaint with the New York State Division of Human Rights ("DHR") charging the SCPD with an unlawful practice relating to employment because of disability in violation of N.Y. Executive Law, Article 15; designated DHR Case No. 10193163. *Id*. at ¶ 18. Plaintiff filed a second DHR complaint on August 21, 2018 with DHR charging the SCPD with an unlawful practice relating to employment because of disability; designated DHR Case No. 10196475. *Id*. at ¶ 27. On or about October 10, 2018, Plaintiff filed a third verified complaint with the DHR charging the SCPD with an unlawful practice relating to employment because of disability and for retaliation for exercising rights afforded him under the aforesaid law; designated DHR Case No. 10197750. *Id*. at ¶ 28.

On February 13, 2019, Plaintiff filed a fourth verified complaint against Defendants with the DHR setting forth, in sum and substance, the facts and circumstances alleged in the instant action and alleging unlawful discrimination in employment on the basis of disability in violation of N.Y. Executive Law, Article 15, and for retaliation for exercising rights afforded him under the aforesaid law; designated NYS DHR Case No. 10200005. That charge was thereafter, "dual filed" with the EEOC and designated Federal Charge No. 16GB902219. Pursuant to a Determination dated August 21, 2019, DHR determined that there was no probable cause to believe that defendants engaged in or are engaging in the unlawful discrimination alleged in the complaint. Pursuant to a Dismissal and Notice of Rights advisement, dated December 20, 2019, the United States Equal Employment Opportunity Commission ("EEOC") advised Plaintiff that it had adopted the findings of DHR and was, accordingly, dismissing Federal Charge No. 16GB902219. The Notice further advised plaintiff of his right to file a lawsuit alleging liability

5

under the ADA, based on the allegations set forth in the Charge, within ninety (90) days of his receipt of the Notice. Plaintiff then commenced the instant action within ninety (90) days of the Notice. *Id*. at ¶¶ 52-55.

Based upon the foregoing set of facts Plaintiff asserts twelve six causes of action, including a failure to provide reasonable accommodation in violation of the ADA and Rehabilitation Act against all Defendants (First Claim for Relief), disparate treatment based upon a disability in violation of the ADA and Rehabilitation Act against all Defendants (Second Claim for Relief),  retaliation for engaging in a protected activity in violation of the ADA and Rehabilitation Act against all Defendants (Third Claim for Relief), violation of Plaintiff's right to be free from discrimination against the Individual Defendants -- 42 U.S.C. § 1983 (Fourth Claim for Relief); violation of the Fourteenth Amendment's right to procedural due process against the Individual Defendants – 42 U.S.C. § 1983 (Fifth Claim for Relief); violation of the Fourteenth Amendment's right to substantive due process against the Individual Defendants – 42 U.S.C. § 1983 (Sixth Claim for Relief); violation of Plaintiff's right to equal protection against the Individual Defendants – 42 U.S.C. § 1983 (Seventh Claim for Relief); a *Monell* Claim against the County and the SCPD for violation of Plaintiff's rights under the ADA, the Rehabilitation Act and the Fourteenth Amendment (Eighth Claim for Relief); Intentional Infliction of Emotional Distress against the Individual Defendants (Ninth Claim for Relief); Negligent Infliction of Emotional Distress against the Individual Defendants (Tenth Claim for Relief); prima facia tort against the Individual  Defendants (Eleventh Claim for Relief) and vicarious liability under New York common law against all Defendants (Twelfth Claim for Relief).

**B.  Procedural Background**

6

Plaintiff filed the complaint in this action on January 24, 2020.  ECF No. 1.  Defendants filed letter requests to Judge Azrack requesting permission to file a motion to dismiss Plaintiff's complaint setting forth the grounds for dismissal on May 28, 2020.  ECF No. 14.   At the conference to discuss the motion, Judge Azrack encouraged the parties to go forward with discovery, and, allowed the parties to submit a briefing schedule on the motion to dismiss.  On November 4, 2020, Defendants moved to dismiss Plaintiff's claims pursuant to Rule 12 (b)(6).  Plaintiff opposes the motions and cross moved for permission to amend the complaint.  By Order dated May 25, 2021, this motion was referred to the undersigned by Judge Azrack.

## DISCUSSION

### A.  Standard of Review

#### 1.  Motion to Dismiss -  Rule 12(b)(6)

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss.  District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*  Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

7

For the purposes of a Rule 12(b) motion, "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated by reference, and to matters of which judicial notice may be taken." *Serdarevic v. Centex Homes, LLC,* 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quotation omitted); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). In addition, "in some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Id.* (citation and internal quotation marks omitted). "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough." *Id.* (quoting *Global Network*, 458 F.3d at 156). "'In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason -- usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim -- was not attached to the complaint." *Id. (quoting Global Network*, 458 F.3d at 157)).

In addition, "'[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *Global Network*, 458 F.3d at 157 (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)). Similarly, it is well settled in this Circuit that the Court may take judicial notice of the EEOC charge for purposes of the motion to dismiss. *See, e.g., Percy v. N.Y. (Hudson Valley DDSO)*, 264 F. Supp.

8

3d 574, 587 (S.D.N.Y. 2017) (court may take judicial notice of EEOC complaints); *Jordan v. Forfeiture Support Assocs.,* 928 F. Supp. 2d 588, 591 (E.D.N.Y. 2013) ("Although plaintiff's EEOC Charge was submitted by defendant, the '[c]ourt takes judicial notice of [p]laintiff's EEOC charge on a motion to dismiss.'") (citing *Morris v. Broadridge Fin. Servs.,* 10CV1707, 2010 U.S. Dist. LEXIS 132708, 2010 WL 5187669, at *3 n. 2 (E.D.N.Y. Dec. 14, 2010)); *Jenkins v. St. Luke's—Roosevelt Hosp. Ctr.,* No. 09-CV-12, 2009 U.S. Dist. LEXIS 105866, at *19 , 2009 WL 3682458 (S.D.N.Y. Oct. 29, 2009). "Because plaintiff's EEOC Charge is 'a public document filed in an administrative proceeding, and is integral to plaintiff's [discrimination] claims, the charge, together with the documents accompanying the charge filed in the EEOC proceeding, are also properly considered on' a motion to dismiss." *Jordan,* 928 F. Supp. 2d at 591 (citing *Cohn v. KeySpan Corp.,* 713 F. Supp. 2d 143, 154 (E.D.N.Y.2010)).

### 2. Motion to Amend – Rule 15

Rule 15(a) provides that leave to amend 'shall be freely granted when justice so requires."  "Only 'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party...[or] futility of the amendment' will serve to prevent an amendment prior to trial." *Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1002 (E.D.N.Y. 1995) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227, 230 (1962)).  An amendment is considered futile if the proposed claim would not survive a motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6).  *See Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 339-40 (2d Cir. 2000).  Accordingly, in determining whether a proposed amendment would be futile, the claims must be construed in the light most favorable to the plaintiff.  *See Foman,* 371 U.S. at 182.  To overcome objections of futility, the plaintiff must merely show that it has at least

9

colorable grounds for relief. *Copantitla v. Fiskardo Estiatorio, Inc.,* 2010 U.S. Dist LEXIS 33430 *11 (S.D.N.Y. Apr. 5, 2010).

## B. Motion to Dismiss

### 1. Discrimination Claims

Plaintiff has asserted three discrimination claims against all Defendants pursuant to the ADA and the Rehabilitation Act:  Failure to Accommodate (First Claim for Relief), Disparate Treatment (Second Claim for Relief) and Retaliation (Third Claim for Relief).

### a. Pleading Standard

Defendants have moved to dismiss Plaintiff's discrimination claims pursuant to Rule 8(a) because the Complaint fails to allege sufficient facts to state claims of unlawful discrimination based on Plaintiff's disability.  Def. Mem. at 7.  According to Defendants, "Plaintiff's Complaint is legally insufficient since it fails to allege the requisite elements of the claims asserted. Plaintiff's Complaint does not allege facts 'consistent with' the conclusion that violations of the law occurred, nor does Plaintiff assert facts that 'actively and plausibly suggest the conclusion.'" *Id.* at 8.  Plaintiff has not responded directly to this argument, however, Plaintiff has cross-moved for leave to file an amended Complaint containing additional facts in support of Plaintiff's claims.[1]  Pl. Op. at 23.

---

[1] "Generally, where a plaintiff does not respond to arguments raised by defendants on a motion to dismiss the claim is deemed abandoned." *Moss v. Bd. of Educ.*, No. 19-CV-2195 (JS) (ARL), 2020 U.S. Dist. LEXIS 183462 (E.D.N.Y. Sept. 30, 2020)   (citing *Allstate Ins. Co. v. Long Island Power Auth.*, No. 14 Civ. 444 (JS) (SIL), 2015 U.S. Dist. LEXIS 24110, 2015 WL 867064, at *2 (E.D.N.Y. Feb. 27, 2015) ("Because Defendants have not responded to Allstate's arguments regarding this affirmative defense, the Court deems this defense abandoned."); *Bilan v. Davis*, No. 11-CV-5509 (RJS) (JLC), 2013 U.S. Dist. LEXIS 107619, 2013 WL 3940562, at *7 (S.D.N.Y. July 31, 2013) (a district court "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed") (quoting *Lipton v. Cnty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2005)).

At the outset, "the Court notes that the SCPD is an administrative arm of Suffolk County, and therefore is not independently amenable to suit." *Harris v. Town of Islip Hous. Auth.*, 2012 U.S. Dist. LEXIS 49130 (citing *Gallo v. Suffolk County Police Dep't.*, 360 F. Supp. 2d 502, 505 n.1 (E.D.N.Y. 2005)); *see also Corrado v. State of N.Y. Univ. Stony Brook Police*, Nos. 15-CV-7443, 15-CV-7444, 2016 U.S. Dist. LEXIS 103509, 2016 WL 4179946, at *3 (E.D.N.Y. Aug. 5, 2016) ("Plaintiff's claims against the SCPD fail because this defendant is an administrative arm of Suffolk County, a municipality, and has no independent legal identity. 'In New York, agencies of a municipality are not suable entities' because '[u]nder New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued.'")(quoting *Omnipoint Comm'ns, Inc. v. Town of Lagrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009)).  Accordingly, the undersigned respectfully recommends that all claims against the SCPD be dismissed with prejudice.

In addition, to the extent the claims set forth in the Plaintiff's first, second and third causes of action are asserted against the Defendants Coyne and Stainkamp individually, those claims must also be dismissed. There is no individual liability under the ADA or the Rehabilitation Act.  *See Santiago v. 1199 SEIU,* No. 18-CV-06711 AMD RLM, 2020 U.S. Dist. LEXIS 134128, 2020 WL 4350048, at *4 (E.D.N.Y. July 29, 2020) ("the ADA and Rehabilitation Act claims against the individual defendants are dismissed); *Matthew v. JPMorgan Chase Bank, N.A.*, No. 17-CV-3594, 2020 U.S. Dist. LEXIS 87088, 2020 WL 2523064, at *8 (E.D.N.Y. May 18, 2020) ("ADA discrimination and retaliation claims cannot be brought against individuals"); *Adams v. Delta Airlines, Inc.*, No. 16-CV-1986, 2017 U.S. Dist. LEXIS 208639, 2017 WL 9674513, at *8 (E.D.N.Y. Dec. 18, 2017), report and recommendation adopted as modified, 2018 U.S. Dist. LEXIS 53534, 2018 WL 1532434 (E.D.N.Y. Mar. 29,

2018) ("There is no right of recovery against individuals under the ADA, the Rehabilitation Act, or Title VII");  *Keitt v. New York City*, 882 F. Supp. 2d 412, 426 (S.D.N.Y. 2011) ("Individuals in their personal capacities are not proper defendants on claims brought under the ADA or the Rehabilitation Act") (citing *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009)); *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 154 (E.D.N.Y. 2010) ("Individuals may not be sued in their individual or personal capacity under the ADA or Rehabilitation Act.").  Accordingly, the undersigned respectfully recommends that all claims against Defendants Coyne and Stainkamp individually pursuant to the ADA or the Rehabilitation Act be dismissed with prejudice.

As to the remaining Defendants --  the County, along with Coyne and Stainkamp, in their official capacities --  in order to state a discrimination claim pursuant to the ADA or the Rehabilitation Act a plaintiff must plead factual allegations supporting a plausible inference that he was discriminated against "by reason of [his] disability." 42 U.S.C. § 12132; *see, e.g., Sneed v. City of N.Y. Dep't of Parks & Rec.*, No. 10-CV-299 (WHP), 2011 U.S. Dist. LEXIS 157810, 2011 WL 4542960, at *3 (S.D.N.Y. Sep. 30, 2011) (citing *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004); *Atkins v. Cnty. of Orange*, 251 F. Supp. 2d 1225, 1231 (S.D.N.Y. 2003).  This "requires the disabled plaintiff to allege that his mistreatment 'was motivated by either discriminatory animus or ill will due to disability.'" *Sneed*, 2011 U.S. Dist. LEXIS 157810, 2011 WL 4542960, at *3 (quoting *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001)). A bare assertion of discriminatory animus, without any specific factual support, is not sufficient to state a claim under the ADA.  *See, e.g., Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011) (citing *Twombly* plausibility standard and dismissing ADA claims partly on grounds that the "facts alleged in [plaintiff's] complaint provide no direct evidence of [disability] discrimination" or suggestion of a discriminatory motive); *Smith v. Reg'l*

*Plan Ass'n*, No. 10-CV-5857 (BSJ) (KNF), 2011 U.S. Dist. LEXIS 117712, 2011 WL 4801522, at *6 (S.D.N.Y. Oct. 7, 2011) ("Without actual facts demonstrating discriminatory animus, discrimination is just one possibility for [defendant's] actions—as such, plaintiff's claim may be conceivable, but it is certainly not plausible.") (internal alterations and quotation marks omitted).

"A plaintiff may demonstrate circumstances giving rise to an inference of discrimination through evidence of overt discriminatory conduct or disparate treatment." *Santiago v. 1199 SEIU*, No. 18-CV-06711 AMD RLM, 2020 U.S. Dist. LEXIS 134128, 2020 WL 4350048, at *4 (E.D.N.Y. July 29, 2020) (quotation omitted).  Here, Plaintiff has not alleged any facts demonstrating overt discriminatory conduct, nor has he alleged facts suggesting similarly situated individuals without disabilities were treated more favorably than he was with respect to their leave requests or firearm's use.  To the contrary, the Complaint is devoid of any allegations regarding any other individual's experience with a 401 leave request.  Plaintiff has failed to "articulate sufficient facts, such as any discriminatory comments, to suggest that . . . [the refusal to grant him continued leave and allow him to maintain his firearm] occurred as the result of a disability-based animus." *Wallace v. Esper*, No. 18-CV-6525 (RA), 2019 U.S. Dist. LEXIS 169758, 2019 WL 4805813, at *7 (S.D.N.Y. Sept. 30, 2019).  "As the Second Circuit has explained, 'the ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action.'" *Langella v. Mahopac Cent. Sch. Dist.,* No. 18-CV-10023 (NSR), 2020 U.S. Dist. LEXIS 95588, 2020 WL 2836760, at *8 (S.D.N.Y. May 31, 2020) (quoting *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019); *see also Bernstein v. N.Y. City Dep't of Educ.*, No. 19-CV-11816, 2020 U.S. Dist. LEXIS 209365, 2020 WL 6564809, at *5 (S.D.N.Y. Nov. 9, 2020) (granting a motion to dismiss because the adverse employment action, standing alone is insufficient to support an

13

inference of discrimination); *Dass v. City Univ. of N.Y.*, No. 18-CV-11325, 2020 U.S. Dist. LEXIS 70420, 2020 WL 1922689, at *8 (S.D.N.Y. Apr. 21, 2020) (granting motion to dismiss because, *inter alia*, "Plaintiff's First Amended Complaint is devoid of any facts giving rise to an inference of discriminatory intent with respect to Plaintiff's disability"); *O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester,* No. 18-CV-8502, 2020 U.S. Dist. LEXIS 47210, 2020 WL 1244474 at *11 (S.D.N.Y. Mar. 16, 2020) (explaining that, in order to survive a motion to dismiss, "Plaintiff must establish not only the presence of discriminatory motive, but that this motive was a 'but-for' cause of the adverse action").  Plaintiff has failed to provide a single fact supporting a discriminatory motive or animus on the part of any of the Defendants. Accordingly, the undersigned respectfully recommends that Plaintiff's claims pursuant to the ADA and the Rehabilitation Act be dismissed.

### b.  Failure to Accommodate (First Claim for Relief)

Plaintiff's First Claim for Relief alleges that all Defendants violated the ADA and the Rehabilitation Act by failing to offer Plaintiff a reasonable accommodation for his disability. Specifically, Plaintiff alleges that Defendants failed to provide "a reasonable accommodation consisting of a continued period of 401 paid leave to allow him to recover from, and be treated by a health care provider for, the physical impairments which resulted in his disability." Compl. ¶ 61.  In addition, Plaintiff alleges that "[b]y failing and refusing to engage the plaintiff in an interactive process to determine whether a reasonable accommodation of his disability was available, [Defendants] discriminated against plaintiff on the basis of his disability, in violation of the ADA and the Rehabilitation Act." *Id*. at ¶ 65.  Defendants move to dismiss this claim on the grounds that Plaintiff's requested accommodation is not reasonable. Def. Mem. at 10.

14

"Discrimination claims under the ADA may be brought under a theory of adverse employment action or failure to provide reasonable accommodation." *Berger v. New York City Police Dep't*, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018) (citing *McMillan v. City of New York*, 711 F.3d 120, 125-26 (2d Cir. 2013)); *Pardo v. Nielsen*, No. 19-CV-616 (MKV), 2021 U.S. Dist. LEXIS 55943, 2021 WL 1167879, at *7 (S.D.N.Y. Mar. 24, 2021).  Plaintiff alleges that he has been discriminated against because Defendants have failed to provide a reasonable accommodation.  To establish a prima facie case of discrimination for failure to accommodate under the ADA, a plaintiff must demonstrate that: "(1) [he] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [his] disability; (3) with reasonable accommodation, [he] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan v. City of New York*, 711 F.3d 120, 125-26 (2d Cir. 2013) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)); *see also Lyons*, 68 F.3d at 1515 (applying the same standard to the Rehabilitation Act).  "The same standard applies to disability discrimination claims under the Rehabilitation Act as under the ADA." *Smith v. New York City Dep't of Educ.,* No. 18-CV-8545 (PGG), 2019 U.S. Dist. LEXIS 204645, 2019 WL 6307471, at *6 (S.D.N.Y. Nov. 25, 2019) (quotation omitted) (quoting *Johnson v. NYS Office of Alcoholism,* No. 16-CV-9769 (RJS), 2018 WL 1353258, at *4 (S.D.N.Y. Mar. 13, 2018)).

"An employer must make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" *Kelly v. New York State Off. of Mental Health,* 200 F. Supp. 3d. 378, 398 (E.D.N.Y. 2016) (quoting 42 U.S.C §

15

12112(b)(5)(A)).  "At the motion to dismiss stage, the [defendant] bears the weighty burden of showing that the fact-intensive inquiry prerequisite to a finding of reasonable accommodation falls completely in its favor." *Goonan v. FRB of N.Y.*, 916 F. Supp. 2d 470, 482 (S.D.N.Y. 2013).

Here, it is far from clear that Plaintiff's request for an accommodation was reasonable. In the complaint, Plaintiff alleges that "the plaintiff was qualified  to perform the essential functions of his position with a reasonable accommodation consisting of a continued period of 401 paid leave to allow him to recover from, and be treated by a health care provider for, the physical impairments which resulted in his disability." Compl. ¶ 61.  Plaintiff does not explain when a return to work could be expected, and, acknowledges he had been out on leave since at least 2015, and possibly 2012.  *Id.* at ¶ 22.  Indeed, Plaintiff offers no justification for his position that he was able to perform the essential functions of his position" while out on leave.  While "'[t]he ADA does not require an employer to grant an employee an indefinite leave of absence' *Stamey v. NYP Holdings, Inc.*, 358 F. Supp. 2d 317, 324 (S.D.N.Y. 2005), a temporary leave of absence may constitute a reasonable accommodation."  *Miller v. Buffalo Pub. Sch.*, 2018 U.S. Dist. LEXIS 190796 (W.D.N.Y. Nov. 6, 2018) (denying a motion to dismiss because" "with only skeletal arguments before me, I conclude that the District has not met its burden of seeking dismissal of the claim on this basis"). [2]

 "[T]he determination of whether a requested accommodation is reasonable requires a fact-intensive inquiry that cannot be resolved on a motion to dismiss." *Smith,* 2019 U.S. Dist.

---

[2] Each of the cases addressing the reasonableness of an accommodation based upon indefinite leave cited by Defendants were decided on a motion for summary judgment, rather than at the pleading stage.  *See, e.g., Booker v. Soho Studio Corp.*, No, 17-CV-5426 (PKC) (SMG), 2020 U.S. Dist. LEXIS 10660, 2020 WL 363912, *5 (E.D.N.Y, Jan. 22, 2020) (granting defendants' motion for summary judgment on ADA claim); *Stamey*, 358 F. Supp. 2d at 324  (same).  *Parker v. Columbia Pictures Indus.*, 204 F. 3d 326, 338 (2d Cir. 2000), cited by Defendants,  does not address the issue.

LEXIS 204645, 2019 WL 6307471, at *6; *see also Staron v. McDonald's Corp.,* 51 F.3d 353, 356 (2d Cir. 1995) ("[I]t is clear that the determination of whether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it."); *Lester v. Mount Pleasant Cottage Sch. Union Free Sch. Dist.,* No. 19-CV-5247, 2020 U.S. Dist. LEXIS 116726, 2020 WL 3618969, at *5 (S.D.N.Y. July 2, 2020) (denying motion to dismiss failure to accommodate claim because "this question would be more appropriately addressed at summary judgment, as many of Defendant's cited cases did"); *Adams,* 2017 U.S. Dist. LEXIS 208639, 2017 WL 9674513, at *7 n.20 ("[w]hether an accommodation is 'reasonable' is more appropriately determined on summary judgment or by the factfinder at trial") (quoting *Vale v. Great Neck Water Pollution Control Dist.,* 80 F. Supp. 3d 426, 438 (E.D.N.Y. 2015)); *Goonan,* 916 F. Supp. 2d at 482 ("At the motion to dismiss stage, the [defendant] bears the weighty burden of showing that the fact-intensive inquiry prerequisite to a finding of reasonable accommodation falls completely in its favor").

Defendants also argue that the failure to engage in an interactive process does not form the basis of an ADA claim, however, this argument is also dependent upon the absence of evidence that accommodation was possible. *See, e.g., McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 100-01 (2d Cir. 2009) ("failure to engage in an interactive process does not form the basis of an ADA claim in the absence of evidence that accommodation was possible" and "evidence thereof does not allow a plaintiff to avoid summary judgment unless she also establishes that, at least with the aid of some identified accommodation, she was qualified for the position at issue"). Accordingly, the undersigned respectfully recommends Defendants' motion

17

to dismiss Plaintiff's failure to accommodate claims under the ADA and the Rehabilitation Act on the basis of the lack of reasonable accommodations requested by Plaintiff be denied.

 c.     <strong>Disparate Treatment (Second Claim for Relief)</strong>

In his Second Claim for Relief, Plaintiff contends that the Defendants unlawfully discriminated against him in violation of the ADA and Rehabilitation Act "by (1) terminating, on January 28, 2019, plaintiff's unrestricted firearms status; (2) prohibiting plaintiff from attending firearms training previously scheduled to take place on February 7, 2019 and, thereafter, refusing to reauthorize plaintiff's firearms training; (3) terminating, on January 28, 2019, plaintiff's 401 paid leave status; and (4) subjecting plaintiff to an ongoing campaign of harassment and intimidation, without any non-discriminatory or other legitimate purpose."  Compl. ¶ 72. Defendants argue that these claims must be dismissed because Plaintiff's Complaint is devoid of any facts relating to or the identity of any similarly situated employees whom he believes were treated differently than him based upon his disability.  Def. Mem. at 12.

Although the question of whether an employee is similarly situated to the plaintiff is generally a question of fact for the jury to decide, courts in this Circuit have held that the plaintiff must at least plead allegations from which it is plausible to conclude that the comparators are similarly situated.  *See, e.g., Wolfinger v. Consol. Edison Co. N.Y., Inc.,* No. 17-CV-1710, 2018 U.S. Dist. LEXIS 128183, 2018 WL 3637964, *8 (E.D.N.Y. July 31, 2018) (granting motion to dismiss because "[w]ithout any information about Plaintiff's allegedly similarly situated comparator, the court is unable to find that Defendant engaged in a pattern of disparate treatment rising to the level of unlawful discrimination"); *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 319 (S.D.N.Y. 2014) ("[A]lthough, [a]t the motion to dismiss stage, . . . evidence [of similarly situated comparators] is not necessary[,] . . . a court still must determine whether,

18

based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated")(internal quotation omitted); *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills,* 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011) ("At the motion to dismiss stage, such evidence is not necessary; however, a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated").

    "An employee is similarly situated to co-employees if they were subject to the same performance evaluation and discipline standards and engaged in comparable conduct." *Neubecker v. N.Y. State, State Univ. of N.Y. Erie Cmty. Coll*., No, 18-189V, 2018 U.S. Dist. LEXIS 136650, at * 5, 2018 WL 8120391(W.D.N.Y. Aug. 18, 2018). "Where . . . there is no suggestion that plaintiff and the comparators had similar job descriptions or responsibilities or were subject to the same performance evaluation or disciplinary standards, dismissal is appropriate." *Id.* In response to Defendants' motion Plaintiff argues that "Coyne and Stainkamp intentionally treated plaintiff differently from others similarly situated; including other SCPD police officers who have been placed on 401 paid leave status by (1) terminating his unrestricted firearms status; (2) prohibiting plaintiff from attending previously scheduled firearms training and, thereafter, refusing to reauthorize his firearms training; (3) terminating his 401 leave status; (4) including amounts paid to plaintiff while on 401 leave in his Form W-2 for tax year 2018; (5) making withholding deductions from periodic payments of his 401 paid leave benefits; and (6) subjecting plaintiff to an ongoing campaign of harassment and intimidation, without any non-discriminatory or other legitimate purpose." Pl. Mem. at 11. These allegations fall far short of what is required to allege a claim for disparate treatment. Plaintiff has failed to allege that the comparators "had similar job descriptions or responsibilities or were subject to the same

19

performance evaluation or disciplinary standards." *Neubecker,* 2018 U.S. Dist. LEXIS 136650, at *6. Because Plaintiff has failed to offer a single allegation directed to disability discrimination, other than his allegation that these purported comparators were treated differently, dismissal is appropriate. Accordingly, the undersigned respectfully recommends that Plaintiff's claims against Defendants for disability discrimination on the basis of disparate treatment be dismissed pursuant to Rule 12(b)(6).

        d.   **Retaliation Claims (Third Claim for Relief)**

Plaintiff's Third Claim for Relief alleges that all Defendants retaliated against Plaintiff under the ADA and Rehabilitation Act for requesting a reasonable accommodation and for filing the administrative charges in NYS DHR Case No. 10193163 (Federal Charge No. 16GB802067); NYS DHR Case No.10196475 (Federal Charge No. 16GB804667); and NYS DHR Case No. 10197750 (Federal Charge No. 16GB900487). Compl. ¶ 78. According to Plaintiff, because he requested an accommodation and filed administrative charges he was retaliated against by Defendants terminating his unrestricted firearms status; prohibiting him from attending firearms training and refusing to reauthorize his firearms training, terminating his 401 paid leave status, including amounts paid to him while on 401 paid leave in his Form W-2 for tax year 2018, making withholding deductions from periodic payments of 401 paid leave benefits, and subjecting him to an ongoing campaign of harassment and intimidation. Compl. ¶ 78. Defendants argue that "Plaintiff has not articulated any actions that were allegedly taken against him by Defendants that rise to the level of an "adverse employment action,'" Def. Mem. at 15 and that "Plaintiff fails to allege sufficient temporal proximity to establish a causal connection." Def. Mem. at 17.

20

"To state a claim for ADA retaliation, 'a plaintiff must allege that: '(1)[ ]he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against [him]; and (4) a causal connection exists between the alleged adverse action and the protected activity.'" *Robles v. Medisys Health Network, Inc*., No. 19-cv-6651 (ARR) (RML), 2020 U.S. Dist. LEXIS 109115, 2020 WL 3403191, at *19 (E.D.N.Y. June 19, 2020) (quoting Caskey, 560 F. App'x at 58); *see also Klaes v. Jamestown Bd. of Pub. Utils*., No. 11-CV-606, 2013 U.S. Dist. LEXIS 45872, 2013 WL 1337188, at *14 (W.D.N.Y. Mar. 29, 2013).  Defendants have moved to dismiss this claim arguing that Plaintiff has failed to allege an adverse action taken against him, and also has failed to allege that a causal connection exists between the adverse action and the protected activity.  Def. Mem. at 14-17.

### i.  Adverse Employment Action

In the retaliation context, an "adverse action" is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).  Plaintiff alleges that Defendants' termination of his unrestricted firearms status and refusal to allow him to attend firearms training constitute an adverse action in the ADA context. In *Terry v. Ashcroft*, 336 F.3d 128, 143 (2d Cir. 2003), the Second Circuit found that the suspension of firearms privileges constituted an adverse employment action for purposes of a retaliation claim under the ADA.  In addition, "Plaintiff's claim that he was forced to return to work prematurely sufficiently alleges an adverse employment action. The claim is not based on a mere alteration in job responsibilities, . . .  but rather a request that Plaintiff perform work that he was physically incapable of performing." *Wallace v. Suffolk Cnty. Police Dep't*, 396 F. Supp. 2d 251, 259 (E.D.N.Y. 2005) (internal quotation marks and citation omitted).

21

Accordingly, the undersigned respectfully recommends that Defendants' motion to dismiss on this basis be denied.

### ii. Causal Connection

A plaintiff can prove that a causal connection exists between the alleged adverse action and the protected activity by "showing that the protected activity was closely followed in time by the adverse action." *Cifra v. General Elec. Co*., 252 F.3d 205, 217 (2d Cir. 2001). While a plaintiff "can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action," *Gorzynski v. JetBlue Airways Corp*., 596 F.3d 93, 110 (2d Cir. 2010), the temporal proximity must be "very close." *Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001). The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an alleged retaliatory action." *Gorman-Bakos v. Cornell Cooperative Extension of Schenectady Cnty.,* 252 F.3d 545, 554 (2d Cir. 2001). District courts in the Second Circuit "have declined to infer a causal relationship when more than two months had lapsed between the instance of protected activity and the allegedly retaliatory act." *McGuire v. Warren*, 05 Civ. 02632 (DCP), 2009 U.S. Dist. LEXIS 107855, 2009 WL 3963941, at *12 (S.D.N.Y. Nov. 18, 2009) (citing *Garrett v. Garden City Hotel, Inc.,* 2007 U.S. Dist. LEXIS 31106, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) (collecting cases)); *see also Davenport v. City of White Plains*, No. 12-cv-8246, 2015 U.S. Dist. LEXIS 127751, at *17, 2015 WL 5459888 (S.D.N.Y. July 8, 2015) ("Gaps of nearly three months and five months, standing alone, are insufficient to show a causal connection based on temporal proximity"); *Ruhling v. Tribune Co*., CV 04-2430 (ARL), 2007 U.S. Dist.

22

LEXIS 116, 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) ("[A] passage of two months between the protected activity and the adverse employment action seems to be the dividing line").

Here, the latest protected activity Plaintiff points to is his filing of a NHYSDR complaint on October 10, 2018.  Compl. ¶ 28.  He was directed to return to limited duty with a "No Firearms" restriction on January 29, 2019.  No temporal proximity exists because the filing of the third complaint was filed three months prior to the allegedly adverse employment action. This lack of temporal proximity, combined with the dearth of facts suggesting discriminatory intent, weigh heavily in favor of dismissal.  Accordingly, the undersigned respectfully recommends that Plaintiff's claim for disability discrimination against the County, and the Individual Defendants pursuant to the ADA and the Rehabilitation Act be dismissed because Plaintiff has failed to allege a causal connection between the adverse employment action and the protected activity.

### 2.  **Constitutional Claims**

Plaintiff also asserts five constitutional claims: (1) Violation of Plaintiff's Rights Under the ADA and the Rehabilitation Act by Persons Acting Under Color of Law against the Individual Defendants in their Official Capacity, (2) Violation of Plaintiff's Fourteenth Amendment Right to Procedural Due Process by a Person Acting Under Color of Law against the Individual Defendants; (3) a Violation of Plaintiff's Fourteenth Amendment Right to Substantive Due Process by Persons Acting Under Color of Law against the Individual Defendants, (4) a Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection of the Laws by Persons Acting Under Color of Law against the Individual Defendants in their official capacity, and (5) Violation of Plaintiff's Rights Under the ADA, the Rehabilitation Act and the

Fourteenth Amendment by a Municipal Entity  asserted against the County and the SCPD. Defendants have advanced two arguments in support of dismissal of Plaintiff's constitutional claims.  Defendants argue that Plaintiff has failed to allege a *Monell* claim against the Individual Defendants or the SCPD, and Plaintiff has failed to adequately allege the personal involvement of either of the Individual Defendants in the alleged constitutional violations.

### a. *Monell* Claim

In the Eighth Claim for Relief, Plaintiff asserts a claim against the County and the SCPD pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), alleging that that the County is responsible for the Section 1983 deprivation of his rights caused by the Individual Defendants because the County "had a policy, practice or custom which condoned or permitted the denial of entitlements  and rights otherwise secured to plaintiff by the ADA and the Rehabilitation Act, and the equal and due process clauses of the Fourteenth Amendment to the United States Constitution."[3]  Compl. ¶ 114.  Defendants move to dismiss this claim against the SCPD and the Individual Defendants.  Def. Mem. at 19.  Since this claim is not asserted against the Individual Defendants, and the SCPD is an administrative arm of Suffolk County is not independently amenable to suit, the undersigned recommends that Defendants' motion to dismiss the claims against the SCPD be granted with prejudice and the motion to dismiss the *Monell* claim against the Individual Defendants be denied.

Defendants argue that Plaintiff has failed to identify a policy of custom as required by *Monell,* and that Plaintiff fails to articulate that any of the alleged actions taken by or decisions made by any of the named individuals in their official capacities possessed final policy making

---

[3] As noted earlier, the SCPD can not be sued, and therefore the undersigned has recommended all claims against it be dismissed with prejudice.

authority, which caused the alleged violation of his civil rights noting that "the critical inquiry is not whether an official generally has final policymaking authority rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit." *Guity v. Uniondale Union Free School Dist.*, No. 18-CV-4369, 2019 U.S. Dist. LEXIS 125357, 2019 WL 3402280 (quoting *Roe v. City of Waterbury*, 542 F. 3d 31, 37 (2d Cir. 2008)).  In response, Plaintiff fails to specifically identify a policy or custom and additionally fails to point to any allegation in the Complaint supporting the conclusion that the Individual Defendants had final policy making authority for the County on the issue of 401 leave, firearms restrictions or equal protection.  A Section 1983 claim cannot be grounded on barebones, conclusory assertions.  *See De Ratafia v. Cty. of Columbia*, No. 1:13-CV-174, 2013 U.S. Dist. LEXIS 138169, 2013 WL 5423871, at *9 (N.D.N.Y. Sept. 26, 2013).

However, nowhere do Defendants ask that the claim against the County be dismissed. Nevertheless, in light of the pleading deficiencies identified above, the undersigned respectfully recommends that Plaintiff's *Monell* claim against the County be dismissed.

### b.  Individual Defendants

Plaintiff asserts four constitutional claims under Section 1983 against the Individual Defendants alleging that they violated Plaintiff's constitutional rights by discriminating against him because of his disability, restricting his firearm use without substantive or procedural due process and denying him equal protection under the law.  Defendants move to dismiss each of Plaintiff's constitutional claims against the Individual Defendants on the grounds that Plaintiff fails to allege how any of the Defendants' actions were an abuse of each Individual Defendant's

position.  Def. Mem. at 21.  Plaintiff argues that this "argument is rendered patently deficient as a consequence of their failure to rebut, or even address, the specific Fourteenth Amendment constitutional claims set forth in the Fourth (ADA and Rehabilitation Act violations); Fifth (procedural due process); Sixth (substantive due process) and Seventh (equal protection) Claims."  Pl. Op. at 19.

Pursuant to Section 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must "allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Rae v. County of Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (internal quotation marks and citation omitted); 42 U.S.C. § 1983.  "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010). The Supreme Court held in *Iqbal*, that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676.  "An individual cannot be held liable for damages under § 1983 merely because he held a high position of authority." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (internal quotation marks and citation omitted).  A complaint based upon a violation under Section 1983 that does not to allege

26

the defendant's personal involvement fails as a matter of law. *Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010).

Defendants argue that all of Plaintiff's constitutional claims must be dismissed against the Individual Defendants because Plaintiff has failed to allege how any of the Defendants' actions were an abuse of each individual Defendant's position. Def. Mem. at 21. Claims brought against defendants in their personal capacity pursuant to 42 U.S.C. § 1983 "ordinarily require[] that the [defendant] be a supervisor or have some position of authority or control over the plaintiff." *Quinn v. Nassau County Police Dep't*, 53 F. Supp. 2d 347, 355 (E.D.N.Y. 1999) (citing cases). "Otherwise, it is difficult to establish that the abusive action was perpetrated 'under color of state law' rather than as an essentially private act . . . ." *Id.* (citation omitted). Where the individual defendant is merely a co-worker of the plaintiff, such claims are routinely dismissed for failure to state a claim. *See id.* (dismissing claim against co-employee on grounds that co-employee "was not acting 'under color of state law'"); *see also Pugliese v. Long Island R.R.,* No. 01 CV 7174, 2006 U.S. Dist. LEXIS 66936, at *20-21 (E.D.N.Y. Sept. 19, 2006) (finding that defendant was "a subordinate, not a supervisor, of [plaintiff], and hence is immune from Plaintiff's § 1983 claims"). Here, there are no allegations that defendants Coyne and Stainkamp were supervisors of Plaintiff or held any position of authority with respect to the Plaintiff whatsoever. Defendants Coyle and Stainkamp are both alleged to be members of the Medical Evaluation Section of the SCPD, and Plaintiff is a police officer. Plaintiff has failed to allege that either of the Individual Defendants held any position of authority with respect to him. Accordingly, the undersigned respectfully recommends that Plaintiff's Section 1983 claims against the Individual Defendants be dismissed.

Also, to the extent Plaintiff's claims for discrimination and violation of the equal protection clause are asserted against the Individual Defendants solely in their official capacity, those claims must be dismissed. *See Anderson v. Spizziota*, No. 11-cv-5663 (SJF), 2016 U.S. Dist. LEXIS 18600, 2016 WL 11480707, at *17 (E.D.N.Y. Feb. 12, 2016), report and recommendation adopted sub nom. *Anderson v. Sposato*, No. 11-cv-5663, 2016 U.S. Dist. LEXIS 44821, 2016 WL 1275044 (E.D.N.Y. Mar. 31, 2016) (granting "dismissal of [Section 1983] claims against Nassau County officials 'in their official capacities' as redundant of the claims against Nassau County"); *Olsen v. Cty. of Nassau*, No. 05-CV-03623, 2008 U.S. Dist. LEXIS 90426, 2008 WL 4838705, at *1 (E.D.N.Y. Nov. 4, 2008) ("Based on the foregoing, to the extent the individual defendants are being sued in their official capacities, any claims against them are merely duplicative of the action against the County")(citation omitted); *Zachary v. Clinton County,* No. 01-CV-1281, 2003 U.S. Dist. LEXIS 26596, 2003 WL 24197685, at *2 (N.D.N.Y. Jan. 10, 2003) ("Claims against individual defendants in their official capacities 'are really just claims against the municipality and, thus, are redundant when the municipality is also named as a defendant'"); *see generally Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity" (emphasis in original; internal citation omitted)).  Accordingly, the undersigned respectfully recommends Plaintiff's Fourth Claim for Relief and Seventh Claim for Relief be dismissed because each of these claims is asserted against the Individual Defendants in their official capacity and thus are duplicative of the claim asserted in the Eighth Claim for Relief against the County.

### 3. State Law Claims

Finally, Plaintiff asserts four state law claims: Intentional Infliction of emotional Distress (Ninth Claim for Relief); Negligent Infliction of Emotional Distress (Tenth Claim for Relief); Prima Facia Tort (Eleventh Claim for Relief) and Vicarious Liability (Twelfth Claim for Relief).

#### a. Intentional Infliction of Emotional Distress (Ninth Claim for Relief)

Plaintiff asserts a claim for intentional infliction of emotional distress against the Individual Defendants claiming that addition to the specific adverse employment action complained of, defendants Coyne and Stainkamp also engaged in an ongoing campaign of harassment and intimidation of plaintiff; including, but not limited to, conducting surveillance and monitoring of plaintiff, his activities and his residence. *See* Compl. ¶ 50. Defendants have moved to dismiss this claim on the grounds that it fails to state a claim under New York law.

"To state a claim for intentional infliction of emotional distress, a party must allege '(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress.'" *Sesto v. Slaine,* 171 F. Supp. 3d 194, 201-02 (S.D.N.Y. 2016) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996)). "When pleading intentional infliction of emotional distress, '[t]he bar is extremely high, and this highly disfavored cause of action is almost never successful.'" *Id.* (quoting *Guan N. v. NYC Dep't of Educ.*, No. 11-cv-4299, 2013 U.S. Dist. LEXIS 2204, 2013 WL 67604, at *25 (S.D.N.Y. Jan. 7, 2013)). Indeed, to satisfy the pleading requirement, a plaintiff must allege conduct that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized society.'" *Id*. (quoting *Conboy v. AT&T Corp*., 241 F.3d 242, 258 (2d Cir. 2001)).

"New York courts are exceedingly wary of claims for intentional infliction of emotional distress in the employment context because of their reluctance to allow plaintiffs to avoid the consequences of the employment-at-will doctrine by bringing a wrongful discharge claim under a different name." *Mariani v. Consolidated Edison Co*., 982 F. Supp. 267, 275 (S.D.N.Y.1997), aff'd, 172 F.3d 38 (2d Cir. 1998); *see also Ponticelli v. Zurich Am. Ins. Group*, 16 F. Supp. 2d 414, 440 (S.D.N.Y. 1998) (collecting cases). "The rare instances where the New York courts have found the complaint sufficient to state an [intentional infliction of emotional distress] claim in the employment context generally involve allegations of more significant battery, or improper physical contact." *Gilani v. NASD*, No. 96 Civ. 8070, 1997 U.S. Dist. LEXIS 12287, 1997 WL 473383, at *14 (S.D.N.Y. Aug. 19, 1997). "Where, as here, the plaintiff premises an intentional infliction of emotional distress claim on harassment, discrimination, or retaliation in the employment context, New York courts are particularly reluctant to find that such conduct is sufficiently extreme or outrageous to satisfy this demanding standard 'absent a deliberate and malicious campaign against the plaintiff.'" *Robles v. Cox & Co*., 841 F. Supp. 2d 615, 631 (E.D.N.Y. 2012) (quoting *Fertig v. HRA Medical Assistance Program*, No. 10-CV-8191, 2011 U.S. Dist. LEXIS 48789, 2011 WL 1795235, at *6 (S.D.N.Y. May 6, 2011) and citing *Gioia v. Forbes Media LLC,* No. 09-CV-6114, 2011 U.S. Dist. LEXIS 113999, 2011 WL 4549607, at * 12 (S.D.N.Y. Sept. 30, 2011) ("[C]ourts within this circuit have generally found allegations of discrimination, wrongful termination, and denial of benefits insufficient to satisfy the rigorous standard for extreme and outrageous conduct.") (collecting cases); *Semper v. New York Methodist Hosp*., 786 F. Supp. 2d 566, 587 (E.D.N.Y. 2011) ("New York Courts are reluctant to

allow [IIED] claims in employment discrimination cases.... Acts which merely constitute

harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism,

intimidation, insults or other indignities fail to sustain a claim of [IIED] because the conduct

alleged is not sufficiently outrageous.") (internal quotation marks and citations omitted);

*Emmons v. City Univ. of New York,* 715 F. Supp. 2d 394, 424 (E.D.N.Y. 2010) ("As a general

proposition, adverse employment actions, even those based on discrimination, are not sufficient

bases for intentional infliction claims."))

     Here, Plaintiff alleges that Defendants engaged in an ongoing campaign of harassment

and intimidation of Plaintiff; including, but not limited to, conducting surveillance and

monitoring of plaintiff, his activities and his residence. Compl. ¶ 50.  The standard for asserting

an intentional infliction of emotional distress claim has been "'set deliberately high to ensure that

a plaintiff's claim of emotional distress is genuine and to dissuade litigation where only bad

manners and hurt feelings are involved.'"  *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F.

Supp. 3d 705, 729-30 (S.D.N.Y. 2014) (citing *Thai v. Cayre Grp*., 726 F.Supp. 2d 323, 336-37

(S.D.N.Y.2010)).  Rather, a cause of action for either intentional or negligent infliction of

emotional distress must be supported by allegations of conduct by a defendant that is "so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious and utterly intolerable in a civilized community."

*Howell v. New York Post Co.,* 81 N.Y.2d 115, 122, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993));

*see also Matthews v. Malkus,* 377 F. Supp. 2d 350, 361 (S.D.N.Y. 2005). "Such extreme and

outrageous conduct must be clearly alleged in order for the complaint to survive a motion to

dismiss." *Matthews*, 377 F. Supp. 2d at 361 (citing *Dillon v. City of New York*, 261 A.D.2d 34,

38, 704 N.Y.S.2d 1 (1st Dep't 1999)); *see also Sheila C. v. Povich*, 11 A.D.3d 120, 130-31 (1st Dep't 2004).

In the present case, Plaintiff's allegations do not rise to the level of outrageousness required to state a claim. *See, e.g.*, *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983), superseded by statute on other grounds as stated in *Leibowitz v. Bank Leumi Trust Co.*, 152 A.D.2d 169, 548 N.Y.S.2d 513 (2d Dep't 1989) (finding that plaintiff's allegations that he was transferred and demoted for reporting fraud, coerced to leave by being told that he would never be allowed to advance, discharged and ordered to leave immediately after reporting other alleged in-house illegal conduct, and forcibly and publicly escorted from the building by guards when he returned the next day to pick up his belongings, fell "far short" of the "strict standard" for outrageous behavior").

Accordingly, the undersigned respectfully recommends Plaintiff's claim for intentional infliction of emotional distress (Ninth Claim for Relief) be dismissed.

### b. Negligent Infliction of Emotional Distress (Tenth Claim for Relief)

Plaintiff also asserts a claim for negligent infliction of emotional distress against Defendants Coyne and Stainkamp (Tenth Claim for Relief). Defendants have moved to dismiss this claim because, according to Defendants, Plaintiff has failed to state a claim.

"To recover for negligent infliction of emotional distress in New York, plaintiffs must show (1) that the defendant 'unreasonably endangered the physical safety of plaintiffs or caused them to fear for their safety' (2) causation, and (3) emotional injuries." *Schafer v. Hicksville Free Union Free Sch. Dist.*, No. 06-CV-2531, 2011 U.S. Dist. LEXIS 35435, 2011 WL 1322903, at *15 (E.D.N.Y. Mar. 31, 2011) (quoting *Nicholson v. A. Anastasio & Sons Trucking Co., Inc.,* 77 A.D.3d 1330, 1331, 909 N.Y.S.2d 244 (4th Dep't 2010)). "As with intentional infliction of

emotional distress, plaintiffs suing for negligent infliction of emotional distress must establish extreme and outrageous conduct." *Id.; see also Regeda v. City of New York*, No. 09-CV-5427, 2012 U.S. Dist. LEXIS 186256, 2012 WL 7157703, at *12 (E.D.N.Y. Sept. 7, 2012) ("The elements of a claim for intentional infliction of emotional distress are nearly identical to a claim for negligent infliction of emotional distress."), report and recommendation adopted by, 2013 U.S. Dist. LEXIS 22313, 2013 WL 619567 (E.D.N.Y. Feb. 19, 2013)).  However, "[t]he Second Circuit has held that common law negligence claims are barred by the New York's Workers' Compensation Law, which provides: "The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee ... when such employee is injured or killed by the negligence or wrong of another in the same employ."" *D'Annunzio v. Ayken, Inc*., 25 F. Supp. 3d 281, 294 (E.D.N.Y. 2014)  (citing *Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir. 1997); *Ferris v. Delta Air Lines, Inc*., 277 F.3d 128, 138 (2d Cir. 2001) (applying *Torres* to negligent retention and supervision claims); N.Y. Work. Comp. Law § 29(6)); *see also Nolan v. Cty. of Erie,* No. 1:19-cv-01245, 2020 U.S. Dist. LEXIS 72729, 2020 WL 1969329, at *8 (W.D.N.Y. Apr. 24, 2020) (citing cases); *Ingram v. Nassau Health Care Corp.,* No. 17-CV-05556, 2019 U.S. Dist. LEXIS 49374, 2019 WL 1332857, at *9 (E.D.N.Y. Mar. 25, 2019) ("It is well settled within the Second Circuit that 'common law negligence claims are barred by the New York[ ] Workers' Compensation Law.'" ).

In support of his claim for negligent infliction of emotional distress, Plaintiff alleges that in January 2019 at the direction of Defendant Stainkamp he "began performing a limited or restricted duty assignment while assigned to the 1st precinct," which required Plaintiff  interact with members of the public who enter the precinct house to report incidents which might require a police response, lodge complaints, etc."  Compl. ¶ 41.  According to Plaintiff, "[a]s a direct

consequence of the plaintiffs restricted status, defendants placed plaintiff in a restricted assignment where he had little or no means of self-defense based on his •physical injury and defendants' restrictions on carrying any firearms on or off duty." *Id*. at ¶41.  According to Plaintiff, this conduct caused Plaintiff to fear for his own safety. *Id*. at ¶ 126.

For the reasons discussed above, Plaintiff has failed to allege extreme and outrageous conduct sufficient to support his claim and based upon the alleged misconduct the negligence claim arises out his employment and is prohibited by New York law, accordingly, the undersigned respectfully recommends that Plaintiff's claim for negligent infliction of emotional distress be dismissed.

### c.  Prima Facie Tort (Eleventh Claim for Relief)

In his Eleventh Claim for Relief, Plaintiff asserts a claim for prima facie tort against the Individual Defendants.  To state a claim for prima fact tort under New York law, a plaintiff must plead: "(1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful." *Katz v. Travelers*, 241 F. Supp. 3d 397, 405 (E.D.N.Y. 2017) (citing *Restis v. Am. Coal Against Nuclear Iran, Inc.,* 53 F. Supp. 3d 705, 730 (S.D.N.Y. 2014)). "The first element requires 'disinterested malevolence,' which means that the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm." *Katz*, 241 F. Supp. 3d at 405 (quoting *Hall v. City of White Plains,* 185 F. Supp. 2d 293, 304 (S.D.N.Y. 2002)) (internal quotation marks and citations omitted).  Moreover, special damages—"a critical element of the cause of action—are damages that are alleged with sufficient particularity to identify actual losses and [that are] related causally to the alleged tortious acts." *Barone v. United States*, 2016 U.S. Dist. LEXIS 59946, 2016 WL 2658174, at *4 (S.D.N.Y. May 5, 2016).  Defendants argue that

Plaintiff has failed to state a claim for prima facie tort because Plaintiff has failed to allege that the actions undertaken by Defendants Coyne and Stainkamp were done with the sole intent to harm.  Plaintiff argues that "inferences which can reasonably drawn from the complaint's express allegations" would support aa conclusion that their actions lacked any legitimate basis. Pl. Op. at 22.  The Court disagrees.  The Complaint alleges that "in his Medscope Evaluation report, dated January 24, 2019, Dr. Rosenberg indicated "I concur with the recommendations of the Police Surgeons who have examined [plaintiff] and recommend that he may return to limited duty work.  Given the chronicity of this case, I recommend a Medscope follow up in one year." Compl. ¶ 33.  Based upon this report, Defendant Stainkamp directed Plaintiff to report for limited duty with a "no firearms" restriction.  *Id*. at ¶ 36-37.  Nothing here supports a conclusion that Defendants acted with an intent to harm Plaintiff.

Accordingly, the undersigned respectfully recommends that Plaintiff's claims for prima facie tort be dismissed.

### d.  Vicarious Liability (Twelfth Claim for Relief)

In his twelfth, and final, Claim for Relief, Plaintiff asserts a claim for vicarious liability against the County and SCPD. Defendants argue that since Plaintiff has not adequately alleged a state law tort claim, no claim for vicarious liability can stand.  "The respondeat superior claim, . . . depends on the plaintiff establishing a state-law tort claim." *Rizk v. City of N.Y.*, 462 F. Supp. 3d 203, 231 (E.D.N.Y. 2020) (citing *Bellamy v. City of New York*, 914 F.3d 727, 744, n.17 (2d Cir. 2019).

Because the undersigned has recommended dismissal of each of Plaintiff's state law tort claims, it is also respectfully recommended that Plaintiff's claim for vicarious liability be dismissed.

### C.   Motion to Amend

Plaintiff has crossed moved for leave to amend the complaint should the Court's decision on the motion deem such an amendment necessary.  The undersigned recommends that the Plaintiff's request be denied.  Plaintiff has failed to provide the Court with a proposed amended pleading setting forth the claims he wishes to assert as required by Rule 15.  "To satisfy the requirement of particularly in a motion to amend a pleading, the proposed amended pleading must accompany the motion so that both the Court and opposing parties can understand the exact changes sought." *Curry v. Campbell*, No. 06-CV-2841, 2012 U.S. Dist. LEXIS 40341, 2012 WL 1004894, at *7 (E.D.N.Y. Mar. 23, 2012) (internal quotation marks and citation omitted). "Indeed, even after he was made aware of this omission, Plaintiff did not seek leave from this Court to supplement his briefing to include his proposed amended pleading." *Capak v. Epps*, 18-cv-4325 (RA) (KHP), 2020 U.S. Dist. LEXIS 63479 (S.D.N.Y. Apr. 7, 2020). "Neither Defendants nor the Court can properly evaluate whether the proposed amendment has any merit absent a proposed pleading." *Id.* (*citing Owens v. Textron Fin. Corp.,* No. 13 CV 5948(VB), 2014 U.S. Dist. LEXIS 113285, 2014 WL 3887181, *5 (S.D.N.Y. July 14, 2014), aff'd 590 F. App'x 83 (2d Cir. 2015) (denying motion to amend because plaintiff had not submitted proposed amended pleading or demonstrated that the amendment would not be futile); *American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 233 F.R.D. 327, 329-30 (S.D.N.Y. 2005) (failing to provide proposed amended pleading was prejudicial to defendant); *Gibbs v. Goord*, No. 02-cv-4556, 2003 U.S. Dist. LEXIS 15203, 2003 WL 22052313, *8 (S.D.N.Y. Sept. 4,

2003) (denying motion to add defendant where plaintiff failed to submit proposed amended complaint)).

In light of the pleading deficiencies identified in this report and recommendation, the undersigned recommends that Plaintiff's motion to amend be denied with leave to refile in accordance with the local rules.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc*., No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York
       August 30, 2021

_____/s/_____

ARLENE R. LINDSAY
United States Magistrate Judge