UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

ROBERT W. BODENMILLER,

                              Plaintiff,

v.                                                              **REPORT AND**
                                                                **RECOMMENDATION**

COUNTY OF SUFFOLK, SUFFOLK                       20-CV-00414 (JMA) (LGD)
COUNTY POLICE DEPARTMENT,
SCOTT COYNE, Individually, and in his
capacity as Chief Surgeon, Medical Evaluation
Section, Suffolk County Police Department, and
EDWARD STAINKAMP, Individually, and in
his capacity as Commanding Officer, Medical
Evaluation Section, Suffolk County Police
Department, jointly and severally,

                              Defendants.

-----------------------------------------------------------X

**LEE G. DUNST**, Magistrate Judge:

        Presently before the Court is Robert W. Bodenmiller's ("Plaintiff") first motion to amend

the Complaint at Electronic Case File Number ("ECF No.") 25.  In support of the motion to

amend are filings by Plaintiff at ECF Nos. 26, 31, 32, and 34.  The County of Suffolk

("County"), the Suffolk County Police Department ("SCPD"), Scott Coyne[1] individually, and in

his capacity as Chief Surgeon, Medical Evaluation Section, SCPD, and Edward Stainkamp,

individually, and in his capacity as Commanding Officer, Medical Evaluation Section, SCPD

(collectively "Defendants") oppose the motion.  ECF No. 29.  For the reasons discussed below,

this Court respectfully recommends that Plaintiff's motion for leave to file an Amended

---

[1] Coyne and Stainkamp are hereinafter referred to as the "Individual Defendants," where
applicable.

Complaint be DENIED WITH PREJUDICE.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff's Complaint And Defendants' Motion To Dismiss

Plaintiff commenced this case on January 24, 2020.  ECF No. 1.  On November 4, 2020,

Defendants filed a motion to dismiss (ECF No. 19), which was referred to Magistrate Judge

Arlene R. Lindsay for a Report and Recommendation on May 25, 2021.[2]  May 25, 2021 Order.

On August 30, 2021, Judge Lindsay issued a Report and Recommendation (ECF No. 20)

granting in part and denying in part Defendants' motion to dismiss, as follows: (1) all claims

against the SCPD be dismissed with prejudice (*id.* at 11); (2) all claims against Defendants

Coyne and Stainkamp under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§

12101, et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (the

"Rehabilitation Act") be dismissed with prejudice (ECF No. 20 at 11); (3) Plaintiff's failure to

accommodate claims under the ADA and the Rehabilitation Act on the basis of lack of

reasonable accommodations that were requested by Plaintiff be dismissed (*id.* at 16-18); (4)

Plaintiff's claims against Defendants for disability discrimination on the basis of disparate

treatment be dismissed (*id.* at 18-20); (5) "Plaintiff's claim for disability discrimination against

the County, and the Individual Defendants be dismissed, because Plaintiff failed to allege a

causal connection between the adverse employment action and the protected activity" (*id.* at 20-

23); (6) Plaintiff's *Monell* claims against the SCPD be dismissed (*id.* at 24-25); (7) the motion to

dismiss the *Monell* claim against the Individual Defendants be denied, since the claim was not

asserted against the Individual Defendants (*id.* at 24); (8) the *Monell* claim against the County be

dismissed (*id.* at 25); (9) the claims pursuant to 42 U.S.C. § 1983 ("Section 1983") be dismissed

---

[2] On June 8, 2022, this was case was randomly reassigned to the undersigned.  June 8, 2022 Order.

against the Individual Defendants (ECF No. 20 at 25-28); (10) Plaintiff's claims for

discrimination in violation of the Equal Protection Clause asserted against the Individual

Defendants in their official capacity must be dismissed (*id.* at 28); (11) Plaintiff's fourth claim

for relief (violation of the ADA and Rehabilitation Act by persons acting under color of law) and

seventh claim for relief (violation of Plaintiff's Fourteenth Amendment right to equal protection

of the law by persons acting under color of law) be dismissed, because they are duplicative of the

eighth claim for relief against the County (violation of Plaintiff's rights under the ADA, the

Rehabilitation Act, and the Fourteenth Amendment by a municipal entity – Section 1983 and

*Monell*) (ECF No. 20 at 28); (12) Plaintiff's claim for intentional infliction of emotional distress

be dismissed (*id.* at 29-32); (13) Plaintiff's claim for negligent infliction of emotional distress be

dismissed (*id.* at 32-34); (14) Plaintiff's claim for *prima facie* tort be dismissed (*id.* at 35); (15)

Plaintiff's claim for vicarious liability be dismissed (*id.* at 35-36); and (16) Plaintiff's cross

motion to amend be denied with leave to refile (*id.* at 36-37).

Plaintiff objected to the Report and Recommendation.  ECF No. 23.  On October 5, 2021,

Judge Azrack held, "the Court adopts Judge Lindsay's R&R with respect to her recommendation

that all of Plaintiff's claims be dismissed except for his failure to accommodate claims.  The

Court, however, will reserve decision on Plaintiff's failure to accommodate claims based on his

application regarding filing an amended complaint."  ECF No. 24.  Judge Azrack afforded

Plaintiff the opportunity to move to amend his complaint.  *Id.* at 2.  However, Judge Azrack

stated:

> [T]he Court is skeptical that Plaintiff can allege plausible, non-conclusory claims
> of discrimination, retaliation, and *Monell* liability.  Plaintiff's allegations
> concerning allegedly similarly situation comparators are patently deficient.
> Plaintiff has also failed to allege sufficient details concerning the circumstances of
> the adverse actions to plausibly suggest discrimination or retaliation.  The Court is
> also skeptical that Plaintiff can plausibly allege that, under the circumstances

here, his accommodation request was reasonable.

*Id.* at 2.

**B.     Plaintiff's Proposed Amended Complaint**

As per Judge Azrack's order, Plaintiff filed a proposed Amended Complaint ("PAC") on November 2, 2021.  ECF No. 25-2.  The facts discussed below are derived from the PAC and, when noted otherwise, from pleadings in this case.

Plaintiff is a resident of Suffolk County and was hired by the County and the SCPD as a Police Officer in 1986 (a position that he still held as of the date of the PAC).  *Id.* ¶¶ 5 & 13. Defendant Scott Coyne is a Suffolk County Police Inspector and Chief Surgeon of the Medical Evaluation Section ("MEU") of the SCPD.  *Id.* ¶ 8.  Defendant Edward Stainkamp is the Commanding Officer of the MEU of the SCPD.  *Id.* ¶ 9.  According to Plaintiff, Coyne and Stainkamp allegedly had:

> final policy and decision making authority (1) to determine whether disabled
> Police Officers being paid by the COUNTY their full salary, in accordance
> Municipal Law § 207-c and designed, for periods of disability by the COUNTY
> and SCPD as being on "401" (line-of-duty; 207-c) status (hereinafter, "401 paid
> leave"), including plaintiff, are permitted to use and possess firearms in
> accordance with privileges otherwise afforded them as sworn police officers in
> New York State or whether, conversely, those privileges should be in any respect
> be restricted or terminated; and (2) to determine whether Police Officers on 401
> paid leave, including plaintiff, are permitted to undergo firearms training and/or
> qualify to possess and use firearms.

*Id.* ¶ 11.  The Defendants also allegedly had full authority to determine when officers on 401 would be subject to "surveillance."  *Id.* ¶ 12.

While on duty on August 4, 2010, Plaintiff sustained an injury to his left shoulder.  *Id.* ¶ 15.  As a result, he was disabled and unable to work as a Police Officer until approximately April 2011.  *Id.* ¶ 16.  While disabled from work, he was paid full salary and designated as being on 401 paid leave and was reassigned to the MEU.  *Id.* ¶

17.  In approximately April 2011, he was reassigned back to the First Precinct of the SCPD and worked in a limited duty or "light duty" capacity.  *Id.* ¶ 18.

About one year later, on March 12, 2012, he reinjured his left shoulder and left elbow while on duty.  *Id.* ¶ 19.  He underwent surgery in January 2013 and was disabled for more than two years and did not work in any capacity as a Police Officer with the County.  *Id.* ¶ 20.  During this time, Plaintiff was paid his full salary.  *Id.* ¶ 21.  On approximately August 28, 2015, Plaintiff returned to work in a limited or "light duty" capacity at the First Precinct.  *Id.* ¶ 22.  Several months later, on approximately November 15, 2015, Plaintiff reinjured his left shoulder.  *Id.* ¶ 23.

According to Plaintiff, a Police Officer assigned to MEU must submit to a medical examination or face discipline.  *Id.* ¶ 27.  An officer who disputes a finding by the Police Surgeon that he is fit to work may submit to an examination by another physician or challenge the determination in an administrative hearing.  *Id.* ¶ 29.

On February 21, 2018, Plaintiff filed his first complaint with the New York State Division of Human Rights ("NYSDHR") alleging an unlawful practice relating to employment because of disability and "dual filed" a similar complaint with the U.S. Equal Employment Opportunity Commission ("EEOC").  *Id.* ¶ 31.  These complaints allege that, on February 9, 2018, he was "berated by his supervisor . . . [Stainkamp] and told that going forward, upon appearing at the offices to the SCPD for purposes of submitting to an examination by a Police Surgeon, he was prohibited from going anywhere else in the building or speaking to anyone he may encounter."  *Id.*  He also challenged the policy of having to report for frequent examinations by MEU Police Surgeons.  *Id.*  In a May 25, 2018 letter to supervising officer Sergeant Colleen Cooney,

he advised that "[t]he situation has continued to accelerate and the level of harassment, intimidation and now retribution has increased substantially." *Id.* ¶ 30.  On August 21, 2018, the NYSDHR found "no evidence respondent's actions were motivated by discriminatory animus," and on October 30, 2018, the EEOC issued a dismissal.  ECF Nos. 29-3 & 29-4.

Plaintiff submitted to an examination on May 30, 2018 by Defendant Coyne, who determined that Plaintiff was capable to return to work in a medically restricted capacity and, accordingly, he was ordered to return to work.  ECF No. 25-2 ¶ 33.  In response, Plaintiff claimed that he was not capable of performing the restricted assignment and would not comply with the order.  *Id.* ¶ 34.

On June 28, 2018, Plaintiff submitted to a Medscope[3] evaluation by Doctor Craig H. Rosenberg.  *Id.* ¶ 37.  Dr. Rosenberg diagnosed Plaintiff with "[c]hronic left shoulder pain with findings of degenerative changes and examination findings suggestive of chronic impingement and bicipital tendinitis; Status post left ulnar transposition surgery with continued complaints of numbness and [paresthesia] primarily in the left ring and pinky digits."  *Id.* ¶ 38.  He noted a number of medications[4] Plaintiff was on and

---

[3] According to Plaintiff:

A Police Officer who disputes a finding by the Police Surgeon that he is fit to return to work, in either a restricted or full duty capacity and that, consequently, he is no longer entitled to remain on 401 paid leave status, is required to elect to have the dispute resolved by either submitting to an examination by another physician (colloquially referred to by members of the SCPD as a "Medscope Evaluation") or by challenging the determination in an administrative hearing convened in accordance with GML § 207-c.

ECF No. 25-2 ¶ 29.

[4] The medication regime included "Lyrica, methocarbamol, oxycodone, tamazepam, amitiza, diazepam, and magnesium."  ECF No. 25-2 ¶ 39.

concluded with a "Duty Status Recommendation" of limited duty with no patrol, no confrontation, and no physical contact with prisoners. *Id.* ¶ 39. He further noted that Plaintiff "remain out of work on temporary total disability pending the adjustment of his daily medication regime," designated plaintiff as "totally disabled," and noted "no firearms." *Id.* ¶¶ 40-41.

Subsequently, Defendant Stainkamp advised Plaintiff that because of Dr. Rosenberg's evaluation, Plaintiff (1) had been determined to be temporarily disabled, (2) would be required to submit to a Medscope reevaluation in three months, and (3) would continue to remain on 401 paid leave status until further notice. *Id.* ¶ 42. Thereafter, Defendants did not schedule a Medscope reevaluation before a Police Surgeon for approximately seven months. *Id.* ¶ 45. Plaintiff then had periodic evaluations by Police Surgeons (primarily by Defendant Coyne). *Id.* ¶¶ 45-47.

On August 21, 2018, Plaintiff filed a second verified complaint before the NYSDHR alleging an unlawful employment practice and retaliation when the SCPD required him to submit to four MEU examinations in less than two months, including an August 6, 2018 examination by Defendant Coyne in which Coyne allegedly pressured Plaintiff to return to work. *Id.* ¶ 49. The NYSDHR found no evidence that "respondent made comments about complainant's disability and/or opposition to discrimination/retaliation or alleged similarly situated comparators were treated differently . . . The Division finds respondent provided legitimate non-discriminatory reasons for the actions it has taken." ECF No. 29-6 at 2.

On October 10, 2018, Plaintiff filed a third verified complaint with the NYSDHR and the EEOC alleging that the County began reporting his disability benefits as taxable

income.  ECF No. 25-2 ¶ 49, Exhibit D.  In response, on April 11, 2019, the NYSDHR

found "respondent provided a legitimate, non-discriminatory reasons for the action it has

taken with complainant."  ECF No. 29-8 at 2.

On December 20, 2018, Defendants advised Plaintiff's collective bargaining

representative that he was scheduled for a Medscope reevaluation examination on

January 24, 2019.  ECF No. 25-2 ¶ 50.  However, Plaintiff did not receive notice of this

examination until December 24, 2018.  *Id.* ¶ 51.

On January 7, 2019, Defendant Coyne examined Plaintiff and found that he could

return to work in a medically restricted capacity.  *Id.* ¶ 52.  Later in January, Plaintiff

submitted to a Medscope evaluation by Dr. Rosenberg, who stated a "review of

[Plaintiff's] current medications reveal there has been no notable interval changes

(compared with the prior Medscope evaluation) except that he no longer takes

methocarbamol regularly."[5]  *Id.* ¶ 56.  Notably, Dr. Rosenberg concluded, "I concur with

the recommendations of the Police Surgeons who have examined [Plaintiff] and

recommend that he may return to limited duty work."  *Id.* ¶ 57.  Dr. Rosenberg further

noted "no firearms."  *Id.* ¶ 58.

On January 28, 2019, Defendant Stainkamp informed Plaintiff that, in accordance

with Dr. Rosenberg's evaluation, (1) Plaintiff had been found to be fit for limited duty;

(2) his limited duty status would carry the restrictions noted in the Member's Physical

Condition and Restrictions Report, and (3) he was being removed from 401 paid leave

status and was being assigned to the First Precinct.  *Id.* ¶ 60.  Consistent with Dr.

Rosenberg's evaluation, Plaintiff then was issued a SCPD identification card stating,

---

[5] The report noted a medication regime including: "Diazepam, amitra, Lyrica, magnesium, Percocet 10/325, methocarbamol, Dulcolax and MiraLAX."  ECF No. 25-2 ¶ 55.

"RESTRICTED NO FIREARMS." *Id.* ¶¶ 61-62.  As a result, Plaintiff was not allowed to participate in firearm training at SCPD.  *Id.* ¶ 64.  Plaintiff alleges, "for the duration of plaintiff's disability while employed by the COUNTY, the COUNTY has permitted non-disabled Police Officer employees – including those who were, and those who were not, subject to a substantially similar medication regime as plaintiff – to possess and use firearms without restriction and did not issue such similarly situated employees restricted identification cards precluding them from possessing firearms." *Id.* ¶ 63.  Plaintiff alleges that some Police Officer employees, who were subject to a substantially similar medication regime as Plaintiff, were permitted to participate in firearms training.  *Id.* ¶ 67.

Plaintiff claims that he was placed in a restricted assignment at SCPD where he had "no means of self-defense based on his physical injury and defendants' restrictions on carrying any firearms on or off duty." *Id.* ¶ 69.  Plaintiff expressed his concerns to SCPD Inspector Kevin Kane in a June 12, 2019 letter, where he claimed that he was being subject to retaliation by Defendant Stainkamp in response to his filing of discrimination complaints with the EEOC and NYSDHR and that the retaliatory behavior "has placed an enormous strain on [his] personal life and interaction with [his] wife and daughters." *Id.* ¶ 70.  He further alleges that while on 401 leave, he was placed under surveillance by Defendants, which caused fear for his wife and daughter.  *Id.* ¶ 71.

Plaintiff alleges that Defendant Stainkamp filed a workplace violence complaint against Plaintiff, because of Plaintiff's previous complaints, which was ultimately found to be "unsubstantiated." *Id.* ¶¶ 74, 76.  He also claims that the County would generally exclude on W-2 forms the entry for "wages, tips and other compensation" amounts paid

to officers on 401 paid leave. *Id.* ¶ 77. However, he alleges that the County included payments made to him for his "401" paid leave in his W-2 forms and improperly deducted tax withholdings from the payments made to him. *Id.* ¶¶ 79-80. However, Plaintiff concedes that this matter was rectified with a revised W-2 issued to him. *Id.* ¶ 81.

On March 20, 2019, Plaintiff served a Notice of Claim on Defendants, pursuant to County Law § 52. *Id.* ¶ 85. One month earlier, on February 13, 2019, Plaintiff filed a fourth verified complaint with the NYSDHR and EEOC alleging unlawful discrimination in employment based on disability. *Id.* ¶ 86; Exhibit J. On August 21, 2019, the NYSDHR determined there was no probable cause to believe that defendants engaged in the unlawful discrimination alleged in the complaint and the EEOC adopted the filings of the NYSDHR. *Id.* ¶¶ 88-89.

The PAC contains eleven causes of action: (1) Failure to Provide a Reasonable Accommodation of Disability against all Defendants, pursuant to the ADA and the Rehabilitation Act (*id.* ¶¶ 91-105); (2) Disparate Treatment Based on Disability against all Defendants pursuant to the ADA and Rehabilitation Act (*id.* ¶¶ 106-14); (3) Retaliation for Engaging in Protected Activity against all Defendants pursuant to the ADA and Rehabilitation Act (*id.* ¶¶ 115-21); (4) Violation of Plaintiff's Rights Under the ADA and the Rehabilitation Act by Persons Under Color of Law against the Individual Defendants pursuant to Section 1983 (*id.* ¶¶ 122-24); (5) Violation of Plaintiff's Fourteenth Amendment Rights to Procedural Due Process by Persons Acting Under Color of Law against the Individual Defendants pursuant to Section 1983 (*id.* ¶¶ 125-36); (6) Violation of Plaintiff's Fourteenth Amendment Right to Substantive Due Process by

Persons Acting Under Color of Law against all the Individual Defendants pursuant to Section 1983 (*id.* ¶¶ 137-40); (7) Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection of the Laws by Persons Acting Under Color of Law pursuant to Section 1983 against the Individual Defendants (*id.* ¶¶ 141-46); (8) a *Monell* Claim for Violation of Plaintiff's Rights Under the ADA, the Rehabilitation Act, and the Fourteenth Amendment by a Municipal Entity against the County (*id.* ¶¶ 147-56); (9) Intentional Infliction of Emotional Distress against the Individual Defendants (*id.* ¶¶ 157-61); (10) *Prima Facie* Tort against the Individual Defendants (*id.* ¶¶ 162-65); (11) Vicarious Liability against the County (*id.* ¶¶ 166-68).

### C.   Plaintiff's Memorandum In Support Of His Motion To Amend

In support of his motion to amend, Plaintiff argues his motion should be freely granted, Defendants have not been prejudiced, and highlights several allegations that purportedly cure deficiencies in the original complaint previously identified by Judge Azrack and Magistrate Judge Lindsay.

With respect to allegedly curing these defects, Plaintiff highlights several new allegations in the PAC, including (1) that Police Officers on similar medication regimes as Plaintiff were not precluded from possessing firearms and participated in firearms training (ECF No 26-1 at 4 (citing ECF No. 25-2 ¶ 108)); (2) within three months of Plaintiff's October 10, 2018 filing of a NYSDHR complaint, a letter was sent first to his collective bargaining representative before being forwarded to him on Christmas Eve; (3) Defendant Coyne determined he was able to return to work on January 7, 2019 (ECF No 26-1 at 4 (citing ECF No. 25-2 ¶¶ 50-52)); (4) for purposes of *Monell* claims, Defendants Stainkamp and Coyne had final policy decision-making authority to determine when

Police Officers on 401 paid leave would be allowed to use and possess firearms (ECF No 26-1 at 5-6 (citing ECF No. 25-2 ¶¶ 11-12)); and (5) Stainkamp and Coyne were Plaintiff's supervisors (ECF No 26-1 at 6 (citing ECF No. 25-2 ¶10)).

### D.    Defendants' Opposition To The Motion To Amend

In opposition, Defendants argue that the motion to amend should be denied, as the claims are futile; Plaintiff fails to satisfy the applicable pleading standard; and Plaintiff fails to state a claim for discrimination, disparate treatment, retaliation, Section 1983, or state tort law.  ECF No. 29.

## II.    LEGAL STANDARDS

### A.    Fed. R. Civ. P. 15(a)

Under Rule 15(a), "[t]he court should freely give leave [to amend] when justice so requires," making sure to interpret the rule liberally in favor of amendment to enable disputes to be resolved on the merits whenever possible.  Fed. R. Civ. P. 15(a)(2); *see, e.g., Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. 2012) (holding such leave to be entrusted to the court's discretion).  However, such a motion may be denied "for good reason, including futility."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (internal citation omitted).  "A proposed amendment would be futile when it would not survive a 12(b)(6) motion to dismiss."  *Sodhi v. Mercedes Benz Fin. Servs., USA, LLC*, 957 F. Supp. 2d 252, 255 (E.D.N.Y. 2013).

Any amended complaint must, at a minimum, contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Further, the amended complaint must "state a claim to relief that is plausible on its face,"

meaning that the amended complaint must include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

The undersigned may issue a report and recommendation on a dispositive issue where, as here, the parties have not consented to the magistrate judge's jurisdiction. *See* 28 U.S.C § 636(b)(1). While granting a motion to amend is considered non-dipositive, denying same "may be construed as dispositive." *Simmons v. Casella*, No. 14-CV-4491 (GRB) (AYS), 2020 WL 1026798, at *2 (E.D.N.Y. Mar. 3, 2020) (Brown, J.); *see Romero v. Bestcare, Inc.*, No. 15-CV-7397 (JS) (GRB), 2018 WL 1702001, at *1 (E.D.N.Y. Feb. 28, 2018) (Brown, M.J.) (holding that determining amendment would be futile "is substantively claim dispositive"), *report and recommendation adopted*, 2018 WL 1701948 (E.D.N.Y. Mar. 31, 2018). Accordingly, this Report and Recommendation complies with Section 636(b)(1).

### B.   Fed. R. Civ. P. 12(b)(6)

"[A]t the pleading stage in an employment discrimination action a plaintiff must only meet the standard set forth in Fed. R. Civ. P. 8(a), which requires a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002)). Pursuant to this standard, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* at 72 (citing *Swierkiewicz*, 534 U.S. at 512). In applying this standard, a district court must "read the facts alleged in the complaint in

the light most favorable" to the plaintiff and accept these allegations as true. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249 (1989).

"Vague and conclusory allegations, however, are not sufficient to withstand a motion to dismiss. A complaint must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory." *Horton v. Nationwide Recovery Sys., Inc.*, No. 05-CV-04018 (NGG) (RER), 2006 WL 2844265, at *1 (E.D.N.Y. Sept. 29, 2006) (internal quotations and citations omitted).

Further, in considering a motion to dismiss, "a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). "Where, however, the court simply refers to supplementary materials, but does not rely on them or use them as a basis for its decision, the 12(b)(6) motion is not converted into a motion for summary judgment."[6] *Id.* In some cases, documents outside the complaint may be considered when they are "integral." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Id.* (citation and internal quotation marks omitted).

## III.    DISCUSSION

The Court finds that Plaintiffs motion to amend the complaint should be denied, as Plaintiffs claims would not survive a Rule 12(b)(6) motion to dismiss and are,

---

[6] Here, the Court is aware of multiple determinations by the NYSDHR that are included in Defendant's Opposition at ECF No. 29, but are omitted from Plaintiff's PAC. However, the Court is not relying on these references in reaching its decision on the pending motion but are included for completeness of the factual record. *See supra* Footnotes 2, 3, and 4.

therefore, futile.

### A.   Plaintiff's Failure To Accommodate Claim Is Futile

Plaintiff's first cause of action asserts that Defendants violated his rights under the ADA and the Rehabilitation Act by failing to provide a reasonable accommodation for his disability, including a "continued period of 401 paid leave to allow him to recover from, and be treated by a health care provided."  ECF No. 25-2 ¶ 96.

To bring a claim under the ADA for failure to provide a reasonable accommodation for a disability, a Plaintiff must show "(1) [he] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [his] disability; (3) with reasonable accommodation, [he] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  *McMillan v. City of New York*, 711 F.3d 120, 125-26 (2d Cir. 2013) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)). The same standard is applied to claims under the Rehabilitation Act.  *DeFugueroa v. New York State*, 403 F. Supp. 3d 133, 158-159 (E.D.N.Y. 2019) (quoting *Hilton v. Wright*, 673 F. 3d 120, 128 n.7 (2d Cir. 2012)).

"An employer must make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'"  *Kelly v. New York State Off. of Mental Health*, 200 F. Supp. 3d. 378, 398 (E.D.N.Y. 2016) (quoting 42 U.S.C § 12112(b)(5)(A)).  At a motion to dismiss stage, Defendants "bear[] the weighty burden of showing that the fact-intensive inquiry

prerequisite to a finding of reasonable accommodation falls completely in its favor." *Goonan v. FRB of N.Y.*, 916 F. Supp. 2d 470, 482 (S.D.N.Y. 2013).

Here, the undersigned agrees with Judge Lindsay's prior findings that Plaintiff's requested accommodations were not reasonable, as they were not limited temporally or in scope – instead, Plaintiff appears to request being on indefinite 401 leave. Such a purported "accommodation" would not be reasonable. *See Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 181-82 (2d Cir. 2016) (indefinite leave of absence is not reasonable accommodation under state law); *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1004 (7th Cir. 1998) ("The ADA does not require an employer to accommodate an employee who suffers a prolonged illness by allowing him an indefinite leave of absence."); *Booker v. Soho Studio Corp.*, No. 17-CV-5426 (PKC) (SMG), 2020 WL 363912, at *5 (E.D.N.Y. Jan. 22, 2020) ("[w]hile temporary leave, for a specified period of time, with clear prospects for recovery, could be a reasonable accommodation, an indefinite leave of absence is not" (cleaned up)); *Stamey v. NYP Holdings, Inc.*, 358 F. Supp. 2d 317, 324 (S.D.N.Y. 2005) ("The ADA does not require an employer to grant an employee an indefinite leave of absence."). Plaintiff appears to concede that the PAC "*might* be construed as alleging an entitlement to a period of leave of which would allow [P]laintiff 'to remain out of work *indefinitely*.'" ECF No. 34 at 19 (emphasis added). Given the allegations in the PAC, the Court concludes this request for an indefinite period of paid leave is precisely the unreasonable accommodation Plaintiff is requesting (as Plaintiff appears unwilling to work in modified Police Officer positions as offered by Defendants).

Consequently, Plaintiff's first cause of action fails.

**B.    Plaintiff's Claim For Disparate Treatment Is Futile**

Plaintiff's second cause of action asserts discrimination under the ADA and Rehabilitation Act, when they (1) terminated his firearm status on January 28, 2019; (2) prohibited him from taking part in firearms training on February 7, 2019; (3) terminated his 401 paid leave status on January 28, 2019; and (4) subjected him to an alleged campaign of harassment and discrimination, without any non-discriminatory or legitimate purpose.  ECF No. 25-2 ¶ 107.  In his PAC, Plaintiff contends that unspecified officers with "substantially similar medication regime[s] as plaintiff" were able "to possess and use firearms without restriction" and were not issued identification cards precluding their firearm possession and participation in firearms training.  *Id.* ¶ 108.

The Second Circuit has explained that an adequate showing of disparate treatment requires "that an employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group.'"  *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)); *Finnigan v. Mattituck-Cutchogue Union Free Sch. Dist.*, No. 20-CV-02837 (JMA) (ST), 2022 WL 1205426, at *6 (E.D.N.Y. Feb. 28, 2022), *report and recommendation adopted*, No. 20-CV-02837 (JMA) (ST), 2022 WL 1205029 (E.D.N.Y. Apr. 22, 2022) (same); *Lopez v. New York City Department of Education*, No. 17-CV-9205 (RA), 2020 WL 4340947, at *8 (S.D.N.Y. July 28, 2020) (same).  To be "similarly situated, a plaintiff must show that her co-employees were subject to the same performance evaluation and discipline standards."  *Graham*, 230 F.3d at 40.  Although the situations need not be "identical," the comparison should have "a reasonably close resemblance of the facts and

circumstances of plaintiff's and comparator's cases." *Id.*

Here, Plaintiff offers nothing other than vague allegations of officers who apparently were on similar medication regimes while they still maintained their firearms and participated in firearm training.  These unspecific allegations fall far short of adequately pled facts that the Court or a jury would need to plausibly consider such a comparison.  *See Finnigan*, 2022 WL 1205426, at *6 ("Courts within the Second Circuit have regularly granted motions to dismiss disparate treatment claims where the complaint was entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were at the company, how their conduct compared to plaintiff's or how they were treated differently by defendants." (citing *Johnson v. Andy Frain Services, Inc.*, 638 Fed. Appx. 68, 70 (2d. Cir. 2016)); *Haggood v. Rubin & Rothman, LLC*, No. 14–cv–34L (SJF) (AKT), 2014 WL 6473527 at *11-12 (E.D.N.Y. Nov. 17, 2014) (dismissing disparate treatment claims that were inadequately pled); *Wolfinger v. Consol. Edison Co. N.Y., Inc.*, No. 17-CV-1710 (NGG) (PK), 2018 WL 3637964, at *8 (E.D.N.Y. July 31, 2018) (granting motion to dismiss because "[w]ithout any information about Plaintiff's allegedly similarly situated comparator, the court is unable to find that Defendant engaged in a pattern of disparate treatment rising to the level of unlawful discrimination").

Plaintiff argues that at this stage, Plaintiff "need not identify 'actual instances where others have been treated differently'; it is sufficient to make more general allegations that similarly situated people have been treated differently."  ECF No. 34 at 4 (citing *Seabrook v. City of New York*, 509 F. Supp. 2d 393, 401 (S.D.N.Y. 2007)).  The Court disagrees.  Here, like in *Seabrook*, the undersigned finds that "a tangential

allegation [that] clearly fails to identify any similarly situated individuals who were treated differently . . . fail[s] to allege actual disparate treatment." *Seabrook*, 509 F. Supp. 2d at 401; *see Searle v. Red Creek Cent. Sch. Dist.*, No. 21-CV-6086-FPG, 2022 WL 3566685, at *7 (W.D.N.Y. Aug. 18, 2022) (dismissing a complaint that "fail[ed] to allege what similarly situated individuals were treated differently" (citing *Seabrook*, 509 F. Supp. 2d at 401)).

### C.    Plaintiff's Claim of Retaliation is Futile

Plaintiff's third cause of action alleges retaliation by Defendants under the ADA and Rehabilitation Act for:

> (1) terminating, on January 28, 2019, [P]laintiff's unrestricted firearms status; (2) prohibiting [P]laintiff from attending firearms training previously scheduled to take place on February 7, 2019 and, thereafter, refusing to reauthorize [P]laintiff's firearms training; (3) terminating, on January 28, 2019, [P]laintiff's 401 paid leave status; (4) including amounts paid to [P]laintiff while on 401 paid leave in plaintiff's Form W-2 for tax year 2018; (5) making withholding deductions from periodic payments of 401 paid leave benefits to [P]laintiff; and (6) subjecting [P]laintiff to an ongoing campaign of harassment and intimidation including, but not limited to, requiring [P]laintiff, since at least February, 2018, to routinely report to MEU on an approximately a bi-weekly basis in order to submit to an examination by a police surgeon and/or questioning and interrogation and conducting covert surveillance of the day-to-day activities of [P]laintiff; and (7) lodging a frivolous complaint alleging that plaintiff had engaged in behavior (bullying) amounting to a violation of Suffolk County's Workplace Violence prevention policy.

ECF No. 25-2 ¶ 116.  Plaintiff claims that this retaliation occurred because of him exercising his rights under the ADA and the Rehabilitation Act, including seeking redress for unlawful employment discrimination by filing charges before the NYSDHR.  *Id.*

"To state a claim for ADA retaliation, 'a plaintiff must allege that: (1)[ ]he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against [him]; and (4) a causal

connection exists between the alleged adverse action and the protected activity.'" *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651 (ARR) (RML), 2020 WL 3403191, at *5 (E.D.N.Y. June 19, 2020) (quoting *Caskey v. County of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014)).

As Judge Lindsay explained, courts have held that the suspension of firearm privileges and being forced to return to work prematurely *may* be evidence of adverse employment action. ECF No. 20 at 21 (citing *Terry v. Ashcroft*, 336 F.3d 128, 143 (2d Cir. 2003) (finding the suspension of firearms privileges constituted an adverse employment action for purposes of a retaliation claim under the ADA) and *Wallace v. Suffolk Cnty. Police Dep't*, 396 F. Supp. 2d 251, 259 (E.D.N.Y. 2005) (Plaintiff was required to perform work he was incapable of performing)); *see Bonilla v. City of New York*, No. 18 CIV. 12142 (KPF), 2019 WL 6050757, at *12 (S.D.N.Y. Nov. 15, 2019) (finding the removal of gun and badge may qualify as an adverse employment action). Consequently, Plaintiff may have sufficiently alleged adverse employment actions with respect to Defendants revoking Plaintiff's firearm rights and requiring him to return from leave. *See* ECF No. 20 at 21-22. On the other hand, the Court does not find sufficient harm resulting from the issues around the W-2s to constitute adverse action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."). Further, the Court does not find any clear injury or harm – or clear enough facts to allege – resulting from the purported surveillance, harassment (including having to routinely report to MEU), or frivolous report that Plaintiff alleges. First, Plaintiff's allegations of purported surveillance do not include adequate factual support to

allege their plausibility, nor sufficient facts to find they could constitute an adverse employment action. *See Twombly*, 550 U.S. at 556; *Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247, 267 (E.D.N.Y. 2012) (collecting cases finding that surveillance (in the workplace) generally does not constitute an adverse employment action); *Quinones v. Potter*, 661 F. Supp. 2d 1105, 1128 (D. Ariz. 2009) (finding surveillance of Plaintiff's activities was not an adverse employment action). Second, the Court does not see any harm or injury caused by Plaintiff having to report to MEU for bi-weekly examinations. *See Burlington N.*, 548 U.S. at 67 (requiring actual harm for a claim of retaliation); *Baum v. Rockland Cnty.*, 161 F. App'x 62, 64 (2d Cir. 2005) (finding that a medical examination was not an adverse employment action). Finally, the Court also does not find any tangible evidence of harm from the purportedly frivolous complaint of Plaintiff's bullying by Defendant Stainkamp. *See Rhone v. U.S. Capitol Police*, 865 F. Supp. 2d 65, 70 (D.D.C. 2012) ("False accusations and loss of reputation without accompanying negative employment consequences are not adverse employment actions.").

However, the primary issue for all these aforementioned retaliation claims is causation. To prove a causal link between the protected activity and the retaliatory act, Plaintiff "must establish that the employer's retaliatory motive was a 'but-for' cause of the adverse action." *Husser v. New York City Dep't of Educ.*, 137 F. Supp. 3d 253, 272 (E.D.N.Y. 2015). To evaluate causation, courts consider temporal proximity – "gaps exceeding two to three months have generally—but not universally—been found too long to support an inference of causality." *Id.*; *see also Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation. . .

. Six months between protected activity and discharge is well beyond the time frame for inferring retaliatory causation" (internal citation and citation omitted)).

Here, Plaintiff fails to show a clear causal connection between his complaints to the NYSDHR (February 21, 2018; August 21, 2018; October 10, 2018; and February 13, 2019) and any purported retaliation by Defendants. As Judge Lindsay noted, he was directed to return to limited duty with a "No Firearms" restriction on January 29, 2019, and no temporal proximity exists to the aforementioned complaints. *See* ECF No. 20 at 22-23. The undersigned agrees with Judge Lindsay.

Plaintiff's additional arguments in support of causation are unavailing. Plaintiff claims that being required to submit to additional examination by Police Surgeons and Defendants advising his collective bargaining representative of his Medscope reevaluation constitute retaliation. ECF No. 34 at 7-11. The Court disagrees and does not see adequate harm or causation in any of these actions to the complaints to the NYSDHR. *See Baum,* 161 Fed. App'x at 1 (finding that plaintiff having to submit to a medical exam was not an adverse employment action even where the court found causation between Plaintiff having to submit to a medical exam in retaliation for her EEOC claim). Plaintiff further argues that his December 26, 2018 letter to NYSDHR (in which he alleged that defendants had retaliated against him by failing to schedule the Medscope reevaluation in accordance with the timeline set forth in Dr. Rosenberg's June 28, 2018 report) preceded the January 28, 2019 order by Defendant Stainkamp that he return to work. *Id.* at 11. The Court is equally unpersuaded by this causation, as Dr. Rosenberg's January 24, 2019 Medscope Evaluation report was clearly the cause for

Defendant Stainkamp's order four days later, not any speculative retaliatory intent.

**D.      Plaintiff's Section 1983 Claims Are Futile**

Plaintiff's Section 1983 claims in the fourth, fifth, sixth, seventh, and eighth causes of action allege violation of his rights under the ADA and Rehabilitation Act; his right to Procedural Due Process; his Fourteenth Amendment Right to Substantive Due Process by Persons Acting Under Color of Law; his Fourteenth Amendment Right to Equal Protection of the Law by Persons Acting Under Color of Law; and Violation of Plaintiff's Rights Under the ADA, the Rehabilitation Act, and the Fourteenth Amendment by a Municipal Entity (*Monell*).  ECF No. 25-2 ¶¶ 122-56.  The Court finds that these claims are all futile.

**i.      Plaintiff's *Monell* Claim Is Futile**

To bring a *Monell* claim, Plaintiff must prove "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Guity v. Uniondale Union Free School Dist.*, No. 18-CV-04369 (AMD) (AKT), 2019 WL 3402280, at *7 (E.D.N.Y. July 26, 2019) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)).  Further, "[a]custom or policy is established "in one of four ways: by alleging the existence of: (1) a formal policy; (2) action taken or decisions made by policymakers that caused the violation [alleged]; (3) a practice so persistent and widespread that it constitutes a 'custom or usage;' or (4) a failure to properly train or supervise municipal employees."  *Id.* (quoting *Byvalets v. New York City Hous. Auth.*, No. 16–CV–6785 (CBA), 2017 WL 7793638, at *14 (E.D.N.Y. July 28, 2017), *report and recommendation adopted*, No. 16–CV–6785, 2018 WL 1067732 (E.D.N.Y. Feb. 23, 2018)).  When alleging policymakers caused the violation, "the critical inquiry is not

whether an official generally has final policymaking authority; rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit." *Id.* (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008)).

Here, Plaintiff fails to allege any clear policy or custom that violated his rights. Instead, Plaintiff's PAC appears to claim that Defendants Coyne and Stainkamp have final decision-making authority.  ECF No. 25-2 ¶ 149.  Plaintiff claims that Coyne and Stainkamp are "officials with final decision-making authority" and that their actions created a policy or custom pertaining to the administration of benefits to police officers while on paid leave including their rights to possess and use firearms.  *Id.* ¶¶ 148-49.  The Court does not find, however, that Coyne and Stainkamp were final decisionmakers here. Instead, the complaint explains that in accordance with GML § 207-c, an officer disputing a finding by a police surgeon that he is fit for duty may elect to have the dispute resolved by submitting to an examination by another physician or an administrative hearing.  *Id.* ¶ 29.  In this case, Plaintiff was examined by another physician, Dr. Rosenberg, who agreed with the "No Firearms" finding by the police surgeon.  *Id.* ¶¶ 57-58.  Where there has been this potential shared responsibility (rather than complete discretion) or where a decision was not "final," courts have not found municipal liability under *Monell*.  *See Hurdle v. Bd. of Educ. of City of New York,* 113 F. App'x 423, 426 (2d Cir. 2004) (distinguishing between decision making and policymaking authority and finding that a non-final action by a decision maker supervisor did not give rise to municipal liability); *Baity v. Kralik*, 51 F. Supp. 3d 414, 439 (S.D.N.Y. 2014) ("a number of courts in the Second Circuit have found that the authority to make individual

employment decisions was not sufficient to make an official a policymaker for the purposes of *Monell* liability"); *see also Ascolese v. Se. Pennsylvania Transp. Auth.*, 902 F. Supp. 533, 552 (E.D. Pa. 1995), *on reconsideration*, 925 F. Supp. 351 (E.D. Pa. 1996) (finding that entity did not designate all responsibility for decisions to a supervisor and, therefore, there was not municipal liability).  Here, the Court finds that Plaintiff has not adequately pled that Coyne or Stainkamp were final policymakers.  The court fails to see any final policy even at issue here – the purported decisions at issue (namely regarding Plaintiff's use of firearms and to terminate his 401 paid leave status) are potentially temporary and made in conjunction with Dr. Rosenberg's recommendation, pursuant to the procedures for challenging a disability determination.

Similarly, the Court finds Plaintiff's additional arguments under this claim relating to "gross negligence in their supervision of Defendants," "deliberate indifference by Defendants," and failure to properly remediate (ECF No. 25-2 ¶¶ 148-56) as inadequately pled, as the Court does not find sufficient evidence of any underlying constitutional violation.  *See Oquendo v. City of New York*, 492 F. Supp. 3d 20, 32 (E.D.N.Y. 2020) ("It is well-settled that a *Monell* claim cannot succeed without an underlying constitutional violation, and here there is no constitutional violation." (citing *Mastromonaco v. Cty. of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019)).  Therefore, Plaintiff's eighth cause of action is Futile.

### ii.  Plaintiff's Section 1983 Claims Are Futile

Plaintiff's remaining Section 1983 claims in the fourth, fifth, sixth, and seventh causes of action against Defendants Coyne and Stainkamp are also futile.  Judge Lindsay recommended dismissal of all these claims, finding that "Plaintiff has failed to allege how

any of the Defendants' actions were an abuse of each individual Defendant's position" and noting that Section 1983 claims against individuals in their personal capacity require some degree of authority or control over a plaintiff. ECF No. 20 at 27 (citing *Quinn v. Nassau County Police Dep't*, 53 F. Supp. 2d 347, 355 (E.D.N.Y. 1999)). Plaintiff, therefore, attempts to remediate the deficiencies primarily by now claiming that Coyne and Stainkamp were "superior officers of [P]laintiff." ECF No. 25-1 ¶ 10.

"When the defendant sued for discrimination under . . . § 1983 is a municipality—**or an individual sued in his official capacity**, *see Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (claim against a municipal employee in his official capacity is deemed brought against the municipality itself)—the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. Cnty. of Oneida*, N.Y., 375 F.3d 206, 226 (2d Cir. 2004) (emphasis added); *Hudson v. Lockhart*, 554 F. Supp. 2d 494, 497 (S.D.N.Y. 2008) ("[The plaintiff]'s § 1983 claim against the named [d]efendants in their official capacity must be dismissed as well because he has failed to state that the alleged violation of the constitutional rights at issue derived from a municipal policy or practice."). Although he need not identify a specific rule or regulation, "it [would be] sufficient to show, for example, that a discriminatory practice of municipal officials was so 'persistent or widespread' as to constitute 'a custom or usage with the force of law.'" *Id.* (citing *Sorlucco v. New York City Police Department*, 971 F.2d 864, 870 (2d Cir. 1992)); *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1077 (2d Cir. 2021) (same). "However, a 'general and conclusory allegation' of a municipal policy or custom fails to state a plausible claim." *Id.* (citing *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d

Cir. 2015)).  Here, Plaintiff fails to sufficiently identify any such policy or custom that violated his constitutional rights as to these causes of action.  While Plaintiff attempts to reference numerous efforts of Defendants requiring Plaintiff to submit to medical exams as proof of such, (ECF No. 34 at 13), the Court finds this insufficient to adequately plead a policy or custom under Section 1983.  *Id.*

Additionally, to find an individual personally liable under Section 1983, a supervisor must have personal involvement in the challenged activity "not only by direct participation, but by (1) failing to take corrective action; (2) creation of a policy or custom fostering the conduct; (3) grossly negligent supervision, or deliberate indifference to the rights of others."  *Rolon v. Ward*, 345 Fed. App'x 608, 611 (2d Cir. 2009) (citing *Hayut v. State of Univ. of New York*, 352 F.3d 733, 753 (2d Cir. 2003)).  Here, the Court does not find that the allegations against the Individual Defendants satisfy this requirement, primarily as there are no underlying adverse actions that adequately could be found to be a constitutional violation.  *See Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 393 (S.D.N.Y. 2014) (finding alleged discriminatory conduct insufficient to establish adverse action and, therefore, Defendants could not be subject to individual liability); *Moore v. Metro. Transp. Auth.*, 999 F. Supp. 2d 482, 508 (S.D.N.Y. 2013) (same); *Conklin v. Cnty. of Suffolk*, 859 F. Supp. 2d 415, 440 (E.D.N.Y.2012) ("These threats . . . are insufficient to constitute an adverse employment action and thus are insufficient to demonstrate [defendant]'s personal involvement.").  As discussed previously, the Court does not find the allegedly adverse actions by Defendants (including withholding his firearm status and ability to participate in training, issues with his W-2, having to report to MEU, and Defendant Stainkamp purportedly lodging a

frivolous complaint) to allege sufficient harm necessary to constitute a constitutional violation under Section 1983.

Furthermore, the Court notes that Plaintiff's allegations against the Individual Defendants overall lack merit. In the context of carrying a firearm in connection with one's police duties, "'the possession of a handgun license is a privilege, not a right.'" *Boss v. Kelly*, 306 F. App'x 649, 650 (2d Cir. 2009) (quoting *Papaioannou v. Kelly*, 14 A.D.3d 459, 460 (1st Dep't 2005)).[7] The Court sees no clear evidence to find the actions of the Individual Defendants was anything short of the proper administration of their duties.

### E. Plaintiff's State Law Claims Are Futile

The remaining causes of action are state law claims. Plaintiff's ninth cause of action alleges intentional infliction of emotional distress. ECF No. 25-2 ¶¶ 157-61. His tenth cause of action is for *prima facie* tort. *Id.* ¶¶ 162-65. Finally, his eleventh cause of

---

[7] The parties do not address the impact, if any, that the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111 (2022) would have on this case. Furthermore, Plaintiff does not explicitly raise the Second Amendment in his PAC (*but see* ECF No. 25-2 ¶ 69 ("defendants placed plaintiff in a restricted assignment where he had little, or no means of self-defense based on his physical injury and defendants' restrictions on carrying any firearms on or off duty.")). However, the Court does not see from the PAC that Plaintiff's Second Amendment rights would be impacted by this case. *Kaminsky v. Schriro*, No. 14-cv-1885, 2016 WL 3460303, at *8 (D. Conn. June 21, 2016) ("[T]he Second Amendment right to possess firearms is implicated only when an individual is left unable to possess firearms at all."); *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 430 (S.D.N.Y. 2013) ("[T]here is no allegation that Defendants' actions have affected Plaintiff's ability to retain or acquire other firearms or ammunition, and no law has been cited that infringes on Plaintiff's right to obtain other firearms."). Notably, in his concurring opinion, Justice Kavanaugh stated that states can impose "laws forbidding the carrying of firearms in sensitive places such as . . . government buildings." *Bruen*, 142 S.Ct. at 2162. Therefore, it would likely be a fair application of *Bruen* for a police force to be able to regulate which officers have firearms and attend firearm training while on duty.

action claims vicarious liability.  *Id.* ¶¶ 163-68.  All three claims are futile.

With respect to intentional infliction of emotional distress, as explained by Judge

Lindsay:

> "To state a claim for intentional infliction of emotional distress, a party must allege '(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress.'" *Sesto v. Slaine*, 171 F. Supp. 3d 194, 201-02 (S.D.N.Y. 2016) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996)). "When pleading intentional infliction of emotional distress, '[t]he bar is extremely high, and this highly disfavored cause of action is almost never successful.'" *Id.* (quoting *Guan N. v. NYC Dep't of Educ.*, No. 11-cv-4299, 2013 U.S. Dist. LEXIS 2204, 2013 WL 67604, at *25 (S.D.N.Y. Jan. 7, 2013)). Indeed, to satisfy the pleading requirement, a plaintiff must allege conduct that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id.* (quoting *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001)).

ECF No. 20 at 32.  The undersigned finds that the allegations in the PAC, including

purported surveillance and alleged harassment, Plaintiff's examinations, and the firearm

restrictions do not rise to this high standard.

With respect to the claim of *prima facie* tort, a Plaintiff must show:

"(1) intentional infliction of harm, (2) causing special damages, (3) without excuse or

justification, and (4) by an act or series of acts that would otherwise be lawful."  *Hall v.

City of White Plains*, 185 F. Supp. 2d 293, 304 (S.D.N.Y. 2002).  With respect to the first

element, Plaintiff must show that the action was done "with the sole intent to harm."

*Twin Lab., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir.1990).  Here,

Plaintiff offers no such evidence of this intent, and it cannot be inferred from the PAC.

Therefore, this cause of action fails.

As there is no viable state cause of action pled by Plaintiff, Plaintiff's claim for

vicarious liability against the County also fails.  *Rizk v. City of New York*, 462 F. Supp. 3d

203, 231 (E.D.N.Y. 2020) (dismissing a claim for vicarious liability where Plaintiff did not have any viable state law claims).

## IV.    CONCLUSION

For the reasons stated above, the Court respectfully recommends that Plaintiff's motion for leave to file the PAC be DENIED WITH PREJUDICE. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend"); *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice").

## V.    OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Azrack. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

Dated: Central Islip, New York
      February 15, 2023

**SO ORDERED**:

/s/ Lee G. Dunst
LEE G. DUNST
United States Magistrate Judge